**UNITED STATES of America, Appellee,**

v.

**Jorge NEGRON, Defendant–Appellant.**

**No. 1505, Docket 92–1003.**

United States Court of Appeals,
Second Circuit.

Argued May 20, 1992.

Decided June 16, 1992.

David L. Wales, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. S.D. New York, Daniel C. Richman, Asst. U.S. Atty., on the brief), for appellee.

Gary Villanueva, New York City (Anthony L. Ricco, Ricco & Villanueva, on the brief), for defendant-appellant.

Before: VAN GRAAFEILAND, MESKILL, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Jorge Negron appeals from a judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, convicting him, following his plea of guilty, of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (1988). He was sentenced principally to 235 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, Negron contends principally that he was unaware that the conspiracy of which he was a member involved types of narcotics other than heroin and that the district court, in calculating Negron's base offense level under the federal Sentencing Guidelines ("Guidelines"), therefore erred in including the other types of narcotics seized from his codefendants. For the reasons below, we vacate the judgment and remand to the district court for findings with respect to the amount of narcotics properly includable in calculating Negron's base offense level.

## I. BACKGROUND

In early 1990, Negron and several codefendants were arrested for narcotics-related offenses. A raid conducted in connection with the arrests resulted in the seizure of, *inter alia*, approximately 119.75 grams of heroin, 681.83 grams of cocaine, and 190.7 grams of "crack" cocaine from an apartment occupied by two of Negron's codefendants. Negron and his codefendants were charged with conspiracy to distribute heroin, cocaine, and crack; the codefendants were charged with a variety of other offenses as well. In September 1990, Negron pleaded guilty to conspiracy. The other defendants pleaded guilty to various charges.

In his plea allocution, Negron admitted that he had been a member of a narcotics conspiracy for about two years and that during that period he had supplied the organization's workers with heroin. Questioned by the court, he did not admit, however, involvement with other types of narcotics:

Q. As to the charge we've been talking about, a conspiracy charge to deal in narcotics, how do you plead, sir, guilty or not guilty?

A. Guilty.

Q. What was your job?

A. I would supply workers.

Q. To sell?

A. Yes, sir.

Q. Now what kind of stuff was being sold, crack, cocaine, heroin, which?

A. Heroin.

Q. Everything?

A. Heroin.

Q.  Heroin. . . .

(September 11, 1990 Transcript at 41–42.)

Presentence reports ("PSRs") were prepared for all of the defendants. In order to quantify the seized narcotics for purposes of sentencing, the PSRs calculated the drugs other than heroin in accordance with the then-existing Guidelines Drug Equivalency Tables appended to § 2D1.1, in which one gram of cocaine equaled .2 grams of heroin, and one gram of crack equaled 20 grams of heroin. *See* 1990 Guidelines § 2D1.1 Application Note 10; *see also* 1991 Guidelines § 2D1.1 Application Note 10 Drug Equivalency Tables (procedurally requiring conversion of all controlled substances to marijuana equivalents, but not substantively changing these ratios). The PSRs concluded that the equivalent of more than four kilograms of heroin had been seized.

Codefendant Alberto Muniz, the alleged leader of the conspiracy at issue in the present case, objected to the PSR calculation, contending, *inter alia*, that some of the narcotics seized were attributable to a prior conspiracy whose members did not include the defendants in the present case; Muniz also asserted that the seized crack had not been part of the present conspiracy's wares but had merely been temporarily possessed as security for a debt owed to him. Negron joined in Muniz's objections and added an objection to the calculation of Negron's criminal history category. His then-attorney did not state that Negron had not known of the conspiracy's involvement with cocaine or crack.

In April 1991, the district court sentenced Negron's codefendants on the basis of the PSRs' conclusion that the equivalent of four kilograms of heroin was involved. In the wake of these sentences, Negron moved *pro se* to withdraw his own plea of guilty on the ground that his attorney had not adequately informed him of the extent of his sentencing exposure. In support of his motion, he admitted that he had participated in a conspiracy to distribute heroin but argued that he should be allowed to withdraw his plea because he had not expected that the seized crack would be included in calculating his base offense level. After receiving papers prepared by Negron *pro se* and by a new attorney representing him, and hearing testimony by Negron, the district court denied the motion, finding that prior to pleading guilty Negron had been adequately informed of and understood the maximum statutory sentence and the applicability of the Guidelines. Adhering to the view adopted with respect to the other defendants, the court calculated Negron's sentence on the basis of all the narcotics, the equivalent of four kilograms of heroin, seized from his codefendants, stating that

[t]he usual charge to the jury is that no member of a conspiracy need know what every other member of the conspiracy is doing, and any person may join a conspiracy, merely do a little thing, and yet be responsible for everything that everyone else does in connection with the conspiracy. That's exactly what the law is.

(December 12, 1991 Transcript at 4.) Citing *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the court stated that in "talking about the overall conspiracy," Negron could "be held responsible for all of the acts of the other co-conspirators." (December 12, 1991 Transcript at 5.)

Inclusion of the entire four-kilogram quantity of heroin equivalent resulted in a base offense level of 34. The range of imprisonment for level 34, for a person in Negron's criminal history category, was 188–235 months, and the district court sentenced him, as indicated above, to 235 months' imprisonment. If the crack had been excluded, leaving only some 256 grams of heroin equivalent, Negron's base offense level would have been 26, for which the Guidelines range of imprisonment would have been 78–97 months.

## II.  DISCUSSION

On appeal, Negron contends principally that the district court erred in sentencing him on the basis of four kilograms of heroin equivalent without making inquiry or findings as to Negron's knowledge of his codefendants' trafficking in or possession

of the seized crack or cocaine. The government, in addition to opposing the contention on its merits, argues that it has been waived because Negron did not object to the PSR on this ground and thus "failed to give Judge Duffy a chance to rule on" the contention. (Government's brief on appeal at 10.) Preliminarily, we note that the bulk of the four kilograms of heroin equivalent seized consisted of the 190.7 grams of crack, which translated to 3,814 grams of heroin. Thus, for present purposes, the calculation of Negron's base offense level turns solely on the inclusion or exclusion of the crack; the quantity of noncrack cocaine seized, whether included or excluded, would not affect that level. For the reasons below, we conclude that the district court was adequately alerted to Negron's contention that he did not know of his coconspirators' involvement in crack, and we remand to allow the court to make findings with respect to that issue.

As to the government's waiver contention, we agree that Negron's first attorney did not, in stating objections to the PSR, argue that Negron had not known that crack or cocaine was any part of the conspiracy he joined. Negron himself, however, has apparently consistently denied any knowledge that crack had been involved in his conspiracy. In his plea allocution in September 1990, the court asked Negron whether the workers he supplied were selling "crack, cocaine, heroin, which?" Negron responded only "Heroin." The court pressed, "Everything?" Negron reiterated, "Heroin." The court apparently accepted that limitation, and the judgment eventually entered stated that Negron had been convicted of conspiracy to possess with intent to distribute "heroin," and did not mention other drugs.

Consistent with his limited admission at the plea hearing, in his September 4, 1991 *pro se* letter to the court in support of the motion to withdraw his plea Negron stated, *inter alia*, that "Mr. Negron 'does not Know' did not give and was unaware of the existence of the 190 grams non potent Cocaine base cracklike substance"; and that the crack seized by the government had been "used for a 'respect gesture' to Mr.

Muniz in acknowledgement of a $75,000 dollar payment" and that Negron "knew nothing and had no part in the 'crack gesture'." The letter stated that "Negron has never seen or transported any of the 190 grams of three(3) [*sic*] year old cocaine base 'Crack' in any conspiracy.... The product that Mr. Negron knew about was 500 grams of weak heroin." Further, at the hearing on the motion to withdraw his plea, Negron's testimony included the following:

Q. Mr. Negron, when you say to Judge Duffy you didn't understand the guidelines, is what you're saying to the court is that you had no knowledge of the guidelines?

A. I didn't have—I didn't know anything about the guidelines at all. I thought that we would—when I copped out and in the minutes Judge Duffy asked me like two or three times about if it was heroin I was copping out to, and I said, "Yes, heroin," three times, I didn't know there was going to be anything about crack, because *I didn't know anything about crack. I don't agree with that. I didn't have nothing to do with anything like that.*

(December 10, 1991 Transcript at 10 (emphasis added).) Negron added that though he had admitted in his plea allocution, and continued to admit, his distribution of heroin, "I didn't have anything to do with any crack cocaine." (*Id.* at 14.)

▆ Though normally the failure of defense counsel to specify to the district court sentencing objections to be pursued on appeal will constitute waiver, in the circumstances of the present case, with Negron having consistently and persistently denied to the court any knowledge with respect to the crack, we cannot agree with the government's view that the district court had no opportunity to consider that contention. Accordingly, we turn to the merits.

▆ In connection with a narcotics conviction, a defendant's base offense level is calculated with reference to the quantity of narcotics involved in the offense, *see* Guide-

lines § 2D1.1, and the defendant's "Relevant Conduct," *id.* § 1B1.3. Relevant conduct includes acts committed by the defendant himself and acts for which he would "be otherwise accountable," *id.* § 1B1.3(a)(1), such as acts of coconspirators in furtherance of the conspiracy. A defendant is not necessarily, however, held responsible for all of the conduct of the conspiracy. The commentary to § 1B1.3 states, in part, as follows:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity *that was reasonably foreseeable by the defendant.* Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. *Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.*

Guidelines § 1B1.3 Application Note 1 (emphasis added). Thus, when the calculation of the base offense level depends on the quantity of narcotics attributable to a defendant who was a member of a narcotics distribution conspiracy, we have concluded that all transactions engaged in by him or by his coconspirators may be considered if the transactions were either known to him or reasonably foreseeable to him. *See, e.g., United States v. Candito,* 892 F.2d 182, 185–86 (2d Cir.1989). In order to sentence a defendant on the basis of the total amount of narcotics seized from his coconspirators, the court is not required to conclude that the defendant had actual knowledge of the exact quantity of narcotics involved in the conspiracy; it is sufficient if he could reasonably have foreseen the quantity involved. *See, e.g., United States v. Cardenas,* 917 F.2d 683, 687 (2d Cir. 1990).

▪ The sentencing court should make findings as to these knowledge and foreseeability issues in any case in which the defendant asserts that his knowledge and agreement were limited to less than the full quantity of narcotics for which the conspiracy as a whole is responsible. Though the need for such findings will most often be apparent when the defendant's connection with the conspiracy was temporally limited, *see, e.g., United States v. Miranda–Ortiz,* 926 F.2d 172, 177–78 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991) (late-comer), it is also highlighted when, as in the present case, qualitatively different types of narcotics are involved and the defendant asserts that his agreement and knowledge did not reach all types. It should be noted, however, that when a defendant asserts that he is not responsible for the entire range of misconduct attributable to the conspiracy of which he was a member, the Guidelines place on him the burden of establishing the lack of knowledge and lack of foreseeability. *See* Guidelines § 1B1.3 Application Note 1 (court should not include coconspirator conduct "[w]here it is established" that that conduct was not agreed to by, and was not reasonably foreseeable to, the defendant). Placement of this burden on the defendant is consistent with traditional principles as to the allocation of burden of proof. *See generally* 9 J. Wigmore *Evidence* §§ 2485–2486 (3d ed. 1940) (party with an affirmative goal and presumptive access to proof on a given issue normally has burden of proof as to that issue).

▪ As the government acknowledges, the district court did not make findings as to whether or not Negron knew of his codefendants' possession of crack or as to whether or not their involvement in crack was reasonably foreseeable to him. Accordingly, we vacate Negron's sentence and remand to permit the district court to make the appropriate findings, following such proceedings in connection therewith

as the court deems appropriate. If the court finds it established that involvement in crack was neither within the scope of Negron's agreement nor was reasonably foreseeable to him in connection with his agreement to participate in the distribution of heroin, the court should exclude the seized crack in calculating Negron's base offense level.

■ Negron has also argued that the district court erred in refusing to adjust his offense level downward pursuant to Guidelines § 3E1.1 for acceptance of responsibility. The court indicated that its denial of such credit rested largely on the fact that Negron had moved to withdraw his plea of guilty: "With this kind of a motion, how do you get to say that the guy has accepted responsibility? .... The motion made by your client I don't think indicates any acceptance." (December 12, 1991 Transcript at 4, 5.) We express no view on the acceptance-of-responsibility issue at this time except to note that the mere fact that a defendant has moved to withdraw a prior plea of guilty does not necessarily warrant a denial of such credit. Rather, the court must evaluate the reason for the attempt to withdraw the plea and assess the acceptance-of-responsibility question in that light. For example, the Guidelines note that even a defendant who has consistently pleaded not guilty and insisted on being tried may satisfactorily demonstrate acceptance of responsibility for his or her criminal conduct where the insistence on going to trial was designed "to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Guidelines § 3E1.1 Application Note 2. Where the particular quantity of narcotics involved is not an element of the offense, *see, e.g.*, *United States v. Jacobo*, 934 F.2d 411, 416 (2d Cir.1991) (conspiracy and possession with intent to distribute); *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.) (same), *cert. denied*, —— U.S. ——, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), a defendant who continues to admit that he was a member of a narcotics distribution conspiracy but seeks only an adjudication of the quantity of narcotics with which he personally should be charged for purposes of sentencing should not on that account alone be denied credit for acceptance of responsibility. Accordingly, we leave the district court free on remand to reassess whether Negron should be given credit for acceptance of responsibility in light of the reason for his attempt to withdraw his plea.

### CONCLUSION

The judgment of the district court is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.