23 F.3d 408
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse D. BLALARK, Jr., Defendant-Appellant.
 No. 93-3676.
 United States Court of Appeals, Sixth Circuit.
 April 19, 1994.
 
 Before: JONES and BOGGS, Circuit Judges; and FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Jesse D. Blalark, Jr., appeals his sentence entered after his plea of guilty to two counts of armed bank robbery, in violation of 18 U.S.C. Secs. 2113(a) & (d), and one count of using a firearm during a violent offense, in violation of 18 U.S.C. Sec. 924(c). Blalark contends that he should not have been given an enhancement for obstruction of justice and should have been given a three-point reduction for acceptance of responsibility. For the reasons discussed herein, we affirm.
 
 
 2
 * On February 3, 1992, three armed and masked men robbed the Fifth Third Bank in Toledo, Ohio. The robbers threw customers and tellers to the floor, fired into the ceiling, and made off with $9000. Blalark's admissions later identified the robbers as Blalark, Elijah Jones, and Charles Gillard.
 
 
 3
 On March 27, 1992, four masked and armed men robbed the Society Bank in Toledo. According to admissions from Blalark and James L. Bailey, they were Blalark, Bailey, Jones, and Gillard. Jones hit one of the customers in the head with his pistol and threw one of the managers to the floor. They made off with $27,000.
 
 
 4
 Two days later, a drunken Blalark was found slumped over the wheel of his car in the middle of the street in Toledo. He had on him $1300 in cash, including fourteen "bait bills" taken in the Society Bank robbery. When confronted with the identified bills, Blalark denied participating in the robbery. Search warrants were obtained and executed at his and his mother's residences. Clothing identified as having been worn by one of the Fifth Third robbers was found at Blalark's house. At his mother's house, $2000 was found, including more "bait bills" from the Society Bank robbery. When confronted with the evidence resulting from the search warrants, Blalark made admissions to FBI Special Agent Christopher Brennan, implicating himself and the three other men. Blalark provided the agents with the other robbers' addresses, rode with the agents to verify the accuracy of the addresses, drew a diagram of the house of one of the robbers to facilitate the agents' entry, identified pictures of the men and clothing involved in the robberies, and gave details of the robberies. The other men were arrested.
 
 
 5
 On April 16, 1992, Blalark and Bailey pleaded guilty. The plea included terms requiring Blalark to testify truthfully before the grand jury and at the trial of his co-defendants. The United States agreed not to pursue any additional charges against Blalark. Blalark testified before the grand jury. Blalark, Gillard, and Jones were held at the Lucas County, Ohio, jail, but were not separated at all times, as had been agreed. Blalark says that Gillard and Jones harassed and threatened him at the jail.
 
 
 6
 A meeting was arranged on September 3 to review the testimony Blalark was expected to give at the upcoming trial of Gillard and Jones. The meeting was attended by Assistant United States Attorneys Thomas Secor and Thomas Karol, Special Agent Brennan, and Deputy Marshals Rodney Hartzell and David Harlow, as well as Blalark and his counsel. At the meeting, Blalark steadfastly refused to testify at the trial and denied that his refusal was because of threats or intimidation. Further attempts to get Blalark to honor the terms of his plea agreement were unsuccessful.
 
 
 7
 On November 9, 1992, Special Agent Brennan personally served Blalark with a subpoena to testify at the trial of Gillard and Jones. On November 10, Blalark moved to withdraw his guilty plea, stating in an affidavit that he had previously lied to the court in confessing his guilt and that Gillard and Jones were innocent. The affidavit did not indicate that Blalark had been threatened or intimidated by anyone. Blalark in his affidavit also gave a fanciful explanation for his possession of the "bait bills" and other incriminating evidence.
 
 
 8
 The trial of Gillard and Jones began on December 8 and concluded on December 21. Blalark, although subpoenaed, never was called by the United States to testify. The defense also subpoenaed Blalark and did call him to testify. He refused, however, to testify about the robberies. Gillard was convicted on all counts, and Jones was convicted of the Society Bank robbery but not the Fifth Third Bank robbery. The United States apparently had intended to rely on Blalark's testimony to establish Jones's presence at the Fifth Third Bank robbery; there were no other eye-witnesses who could establish Jones's presence there.
 
 
 9
 A January 4, 1993, hearing on Blalark's request to withdraw the guilty plea was set, but moments before that hearing, Blalark requested that his motion be withdrawn. The district court held a hearing on the motion to withdraw. Blalark admitted that he had lied in his affidavit, but never indicated that any coercion or threats had prompted his statements. The district court allowed Blalark to withdraw his motion to withdraw his plea.
 
 
 10
 A revised presentence report was prepared. Blalark objected to the two-level enhancement for obstruction of justice and the denial of a two-point reduction for acceptance of responsibility. Blalark's objections were overruled, and he was sentenced to 300 months' imprisonment for the armed robbery offenses and a consecutive 60-month term for the firearms charge, plus three years' supervised release. He was ordered to make restitution to the banks.
 
 II
 
 11
 and
 
 
 12
 U.S.S.G. Sec. 3C1.1 provides for a two-level enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." This provision "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. Sec. 3C1.1, comment. (n. 1). A defendant may deny guilt, refuse to admit guilt or to provide information to a probation officer, or refuse to enter a plea of guilty without incurring a sentence enhancement under this section. However, Sec. 3C1.1 may be applied to a "denial of guilt under oath that constitutes perjury." Ibid. See also United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993) (defendant's right to testify does not include a right to commit perjury; Sec. 3C1.1 enhancement properly imposed where defendant committed perjury at trial); United States v. Acosta-Cazares, 878 F.2d 945, 953 (6th Cir.) (same), cert. denied, 493 U.S. 899, 110 S.Ct. 255 (1989).
 
 
 13
 The application notes illustrate the types of conduct to which the Sec. 3C1.1 applies enhancement applies. "[C]ommitting, suborning, or attempting to suborn perjury" is one such example. U.S.S.G. Sec. 3C1.1, comment. (n. 3(b)). "[P]roducing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding," "providing materially false information to a judge or magistrate," and "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense" are other types of conduct to which Sec. 3C1.1 applies. Id., comment. (n. 3(c), (f), (g)).
 
 
 14
 The government bears the burden of proving by a preponderance of the evidence the conduct supporting the enhancement. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). The district court's factual findings underlying the application of a guideline provision are reviewed for clear error. We review the application of the guidelines de novo. United States v. Wright, 12 F.3d 70, 72 (6th Cir.1993). Whether Sec. 3C1.1 applies to Blalark's conduct is reviewed de novo because it involves the legal interpretation of a guideline. United States v. Dortch, 923 F.2d 629, 631 (8th Cir.1991).
 
 
 15
 The district court partially rested the obstruction-of-justice enhancement on Blalark's production of a false document--the affidavit accompanying his motion to withdraw his guilty plea, in which he maintained his and his co-defendants' innocence. The district court also relied on the government's inability to call Blalark to testify as a result of his machinations: "And as far as hampering the government, it certainly hampered the government not to be able to produce this witness, and to then convict Mr. Jones, because of lack of identification. So I think the government has carried this issue by the requisite proof." The district court noted that "the pressure on [Blalark] was [not] so great that he lost control of his faculties"; Blalark was not "so under the influence of anyone else that he was not acting independently." Thus, while the government also argued that Blalark's perjury at the trial of his co-defendants warranted an obstruction-of-justice enhancement,[1] the district court appears to have limited the basis for the enhancement to the two factors described above.
 
 
 16
 Blalark argues that the false statements in the affidavit should be "evaluated in a light most favorable to [him]." U.S.S.G. Sec. 3C1.1, comment. (n. 1). He says that because of the threats and harassment from Gillard and Jones, he was protecting himself and his family and did not have the intention of obstructing justice. He asserts that his false affidavit caused the United States no delay. He argues that the plea agreement stated that he would testify "if necessary" and that, because he was subpoenaed but never called, his testimony was not "necessary"; therefore, he says, he lived up to his end of the agreement.
 
 
 17
 Blalark misconstrues the application note. The note on which Blalark relies applies to "allegedly false statements." The allegedly false statements are to be evaluated in a light most favorable to the defendant in determining whether they are false. "It is only the defendant's statement that is to be taken in a light most favorable to him." United States v. Crousore, 1 F.3d 382, 385 n. 3 (6th Cir.1993).
 
 
 18
 As noted, the United States justifies the enhancement on the basis of Blalark's commission of perjury in the Gillard and Jones trial. The Sec. 3C1.1 enhancement applies to conduct "during the investigation, prosecution, or sentencing of the instant offense," and includes the commission of perjury. "Instant offense" generally is held to mean the "offense of conviction." See, e.g., United States v. Barry, 938 F.2d 1327, 1333-34 (D.C.Cir.1991); Dortch, 923 F.2d at 632. The offense of conviction here is two armed bank robberies. Thus, when Blalark committed perjury in the Jones and Gillard trial for the bank robberies, he committed perjury during the disposition of the instant offense. "Upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines." Dunnigan, 113 S.Ct. at 1119; United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). We note, too, that, if believed, Blalark's testimony at the Jones and Gillard trial regarding his relationship with Gillard could have impeded the administration of justice during the investigation and prosecution of the bank robberies at issue in this case. If believed, Blalark's testimony could have hindered bringing to justice one of his associates in the bank robberies. His testimony was therefore material. U.S.S.G. Sec. 3C1.1, comment. (n. 5); Crousore, 1 F.3d at 385. Thus, the district court, upon proper findings of fact, could have relied upon Blalark's commission of perjury in applying the Sec. 3C1.1 enhancement.
 
 
 19
 Blalark's false affidavit impeded the administration of justice with respect to his own conviction. The false affidavit constituted a false document produced during the prosecution of Blalark's case, and, through the affidavit, Blalark provided materially false information to the court. U.S.S.G. Sec. 3C1.1, comment. (n. 3(c), (f)). Under the application notes, an obstruction-of-justice enhancement because of the affidavit is appropriate here. Further, several of the agents present at the September 3 meeting testified at the sentencing hearing that Blalark stated at that meeting that he had received no threats and was not acting because of coercion or intimidation. This testimony supports a finding that the motion to withdraw the plea was not justified and that Blalark's false affidavit unjustifiably caused delay and expense of resources in his own case. Finally, Blalark's false affidavit impeded the prosecution of Jones for the bank robberies because the government, not knowing if Blalark would testify truthfully, was unable to call Blalark to testify. The district court therefore properly relied on Blalark's false affidavit as a basis for a Sec. 3C1.1 enhancement.
 
 
 20
 We thus uphold the district court's imposition of a two-level enhancement for obstruction of justice.
 
 B
 
 21
 Blalark also argues that he should have been awarded a three-level reduction in his sentencing offense level for acceptance of responsibility for his crimes. A defendant may be awarded a two-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. Sec. 3E1.1(a). He may get an additional one-level reduction if he qualifies for a Sec. 3E1.1(a) reduction and has assisted the government by providing complete information about his own involvement in the offense or by timely notifying the government of his intention to plead guilty. U.S.S.G. Sec. 3E1.1(b).
 
 
 22
 The defendant must show by a preponderance of the evidence that he has accepted responsibility for the crime committed. Whether the defendant has accepted responsibility is a question of fact, and the district court's assessment of the defendant's alleged acceptance is accorded great deference and is not to be disturbed unless clearly erroneous. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991); Crousore, 1 F.3d at 386. The "determination of the sentencing judge is entitled to great deference on review." U.S.S.G. Sec. 3E1.1, comment. (n. 5).
 
 
 23
 Entry of a guilty plea and admitting relevant conduct "constitute significant evidence of acceptance of responsibility," but this evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. Sec. 3E1.1, comment. (n. 3). "Conduct resulting in an enhancement under Sec. 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. Sec. 3E1.1, comment. (n. 4). "[A]ppropriate considerations" under Sec. 3E1.1(a) include truthful admission of the offense conduct and "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense." U.S.S.G. Sec. 3E1.1, comment. (n. 1).
 
 
 24
 Blalark points to several factors weighing in favor of a finding of acceptance of responsibility. Blalark admitted his role in the robberies, assisted the agents in identifying and locating the other robbers (including drawing diagrams), identified clothing and pictures of the robbers, and testified before the grand jury. Blalark attempts to minimize the effect of his motion to withdraw his guilty plea by characterizing it as a "temporary lapse."
 
 
 25
 A number of factors militate against a finding that Blalark accepted responsibility for his crimes. Blalark did not surrender himself promptly after the offense (he was found two days after the second robbery), initially denied involvement in the offense when found, admitted involvement only when confronted with the evidence obtained as a result of the execution of the search warrants, admitted that he told the truth in order to get a reduced sentence,[2] untruthfully testified about his relationship with Gillard, refused to acknowledge the relevant conduct of the offense from September 3 until January 4, denied involvement in the robberies in his false affidavit, did not admit fully his involvement to the probation officer when interviewed after January 4, and did not express contrition when given an opportunity to speak before sentence was imposed.
 
 
 26
 Thus, although there is some evidence to the contrary, ample evidence supports the district court's decision not to grant a two-level reduction for acceptance of responsibility.
 
 
 27
 Blalark relies on United States v. De La Rosa, 922 F.2d 675 (11th Cir.1991), United States v. Negron, 967 F.2d 68 (2d Cir.1992), and United States v. Bogas, 731 F.Supp. 242 (N.D.Ohio), remanded on other grounds, 920 F.2d 363 (6th Cir.1990). None of these cases persuades us that the district court here erred in not granting a reduction for acceptance of responsibility.
 
 
 28
 De La Rosa affirmed the district court's determination that the defendant was entitled to a two-level reduction for acceptance of responsibility. Blalark stresses the factual similarities between his case and De La Rosa, arguing that in each case the defendant cooperated with authorities in the intial stages of investigation of the offense, thereby making arrests of others possible. The defendant in De La Rosa later sought to suppress evidence obtained with his assistance--suggesting a lack of acceptance of responsibility--but the district court granted the reduction anyway. Blalark says that the same result should obtain here with respect to his "temporary lapse." However, in affirming the district court, the court of appeals in De La Rosa emphasized the deference owed to the district court's findings. 922 F.2d at 680. Granting substantial deference to the district court's findings here, we conclude that the district court did not err in finding that Blalark was not entitled to a reduction for acceptance of responsibility.
 
 
 29
 In Negron, the court of appeals stated that "the mere fact that a defendant has moved to withdraw a prior plea of guilty does not necessarily warrant a denial" of credit for acceptance of responsibility. 967 F.2d at 73. The court directed the district court to "evaluate the reason for the attempt to withdraw the plea and assess the acceptance-of-responsibility question in that light." Ibid. As noted, the district court here did consider--albeit in the context of the obstruction-of-justice enhancement--the "pressure" that Blalark was under when he filed his motion to withdraw his plea, but concluded that he was not "so under the influence of anyone else that he was not acting independently." To the extent that Negron applies here, the district court complied with its demands, and the district court's findings are not clearly erroneous.
 
 
 30
 Finally, in Bogas, the district court added an obstruction-of-justice enhancement because the offense conduct involved behavior to prevent the detection or prosecution of the crime. The court, however, credited the defendant with acceptance of responsibility because he had cooperated with the authorities, a false statement made by him was easily ascertainable, and he subsequently was "unfailing in his continued cooperation with the authorities." 731 F.Supp. at 251-52. The district court also noted that Bogas was one of those "extraordinary cases" in which both sentencing adjustments may apply. Id. at 252. Blalark's case, in contrast, is not such an extraordinary case. Although the assistance Blalark provided to the authorities appears substantial, much of his conduct, including testifying untruthfully about his relationship with one of his co-defendants and manufacturing a story to explain his possession of incriminating evidence, belies an acceptance of responsibility for his crimes. The district court did not err in denying Blalark a Sec. 3E1.1 reduction.
 
 III
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Specifically, the government points to Blalark's perjurious testimony that he had only met Gillard once before, to borrow some tools, not to rob some banks
 
 
 [2]
 At the sentencing hearing, Blalark explained his reasons for assisting the authorities as follows: "Uh ... it was, it was just the right thing to do ... uh, they had had certain amount of evidence, and I just felt it best to come forward with the truth, and something that they had stated to me, also, kind of convinced me to tell the truth.... They told me that I would be helping myself, I would be saving myself twenty years by just telling the truth, so, therefore, I did." J.A. at 95