**Rodrigo VASQUEZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. 93 Civ. 4742 (JES), 89 Cr. 0440 (JES).

United States District Court, S.D. New York.

Feb. 28, 1995.

---

Rodrigo Vasquez, petitioner, pro se.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City, for respondent; John M. Desmarais, Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2255, *pro se* petitioner Rodrigo Vasquez brings the instant petition to vacate and correct his sentence. In his petition, Vasquez argues that the Court misapplied the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). For the reasons that follow, the petition is denied.

## BACKGROUND

At all times pertinent to this action, Luis Hernandez operated as a confidential informant for the Drug Enforcement Administration ("DEA"). On May 26, 1989, Hernandez and Ramon Padilla met unexpectedly on the corner of 138th Street and St. Ann's Avenue in the Bronx. Trial Transcript ("Tr.") 75–77. During the course of the meeting, Hernandez indicated that he wanted to purchase two kilograms of cocaine. *Id.* at 75. In response, Padilla indicated that his connection could supply Hernandez with the drugs. *Id.* Prior to departing, Padilla stated that he would contact his connection and then telephone Hernandez to arrange the transaction. *Id.*

Following the first meeting, Hernandez returned to his apartment and telephoned DEA Agent Leonard Johnson to apprise him of the situation. Tr. 77. During the course of the conversation, Padilla telephoned Hernandez and arranged another meeting. *Id.* Shortly thereafter, Hernandez, Padilla and another individual, known as Ralphie, proceeded to a grocery store located on 214 St. Ann's Ave-

nue. *Id.* at 77–79. At the grocery store, Hernandez was introduced to Basilio Vasquez and Rodrigo Vasquez. *Id.* at 79. While Rodrigo Vasquez tended to other matters, Basilio Vasquez, Hernandez, Padilla and Ralphie proceeded to the back of the store. *Id.* at 81. In the back, Ralphie explained to Basilio Vasquez that Hernandez wanted to purchase two kilograms of cocaine. *Id.* at 81–83. Basilio Vasquez then informed Hernandez that the two kilograms of cocaine would cost $32,000 and that a few hours would be necessary to execute the deal. *Id.* at 83.

Following the second meeting, Hernandez again returned to his apartment and telephoned Johnson to apprise him of the situation. Tr. 83. Hernandez was instructed to arrange for the transaction to occur by 6:00 p.m. *Id.* To that end, Hernandez returned to the grocery store a short time later. *Id.* at 84. At the store, Basilio Vasquez, Rodrigo Vasquez, Padilla and Ralphie were present, but the cocaine had not yet arrived. *Id.* In the presence of the other three men, Hernandez apprised Basilio Vasquez that the deal was taking too long and that the ultimate purchaser could wait no longer than 6:00 p.m. *Id.* at 85. After phoning his connection, Basilio Vasquez advised Hernandez that the deal may not occur by 6:00 p.m. *Id.* at 86.

Thereafter, Hernandez paged the DEA office by beeper. Tr. 86. DEA Agent Al Laboy, who was acting as the ultimate purchaser, phoned Hernandez at a public telephone located in the grocery store. *Id.* After briefly speaking with Hernandez, Laboy spoke with another individual later identified as Rodrigo Vasquez. *Id.* at 87, 199. During the conversation, Laboy told Rodrigo Vasquez that he wanted to conduct the transaction no later than 6:30 p.m., and in Manhattan rather than the Bronx. *Id.* at 199. Although Rodrigo Vasquez suggested that the transaction occur in the Bronx, Laboy insisted that any deal would have to occur in Manhattan. *Id.* Shortly thereafter, the supplier connection telephoned the store and assured Hernandez that the deal would occur as quickly as possible. *Id.* at 87–88.

At approximately 6:00 p.m., Nelson Castano and Raul Morales entered the store carrying a shopping bag containing two packages of cocaine. Tr. 89–91. Castano and Morales greeted Rodrigo Vasquez and proceeded to the back of the store with Basilio Vasquez. *Id.* at 89–90. In the back of the store, Hernandez was shown the two packages, one of which he inspected and identified as cocaine. *Id.* at 92. At that point, Basilio Vasquez advised Hernandez that the initial transaction would involve only one package. *Id.* Basilio Vasquez further advised Hernandez that if the initial deal were successful, they would return to the grocery store and deal with the second package. *Id.* Hernandez then phoned Laboy and informed him that the deal was about to occur in Manhattan. *Id.* at 94.

Hernandez, Castano and Morales then took one of the packages and departed for 97th Street and Riverside Drive in Manhattan. Tr. 94–96. When the three men arrived at 97th Street, the DEA arrested Castano and Morales with the one package of cocaine. *Id.* at 99. At approximately 7:00 p.m., the DEA arrested Basilio Vasquez, Rodrigo Vasquez and Padilla in the grocery store, but Ralphie eluded arrest. *Id.* at 199–200, 209. The DEA never recovered the second package of cocaine. *Id.* at 223.

On October 5, 1989, Rodrigo Vasquez was convicted of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. On December 27, 1989, the Court sentenced Vasquez to a term of imprisonment of 72 months, a term of supervised release of four years, a $10,000 fine and $100 in mandatory special assessments. On January 13, 1992, the Second Circuit affirmed the conviction by summary order. *See United States v. Padilla*, Nos. 90–1043, 91–1136, 956 F.2d 1159 (2d Cir. Jan. 13, 1992).[1]

On May 4, 1993, Vasquez filed an applica-

---

1. On direct appeal, Vasquez argued that there was insufficient evidence to support his convic-

tion. *See United States v. Vasquez*, Nos. 90–1043, 91–1136 (2d Cir. Jan. 13, 1992).

tion to vacate the fine imposed by the Court.[2] On December 27, 1993, Vasquez filed the instant petition pursuant to 28 U.S.C. § 2255 arguing that the Court misapplied the Guidelines. Vasquez argues that the Court should have considered the one kilogram of cocaine actually distributed to calculate his base offense level, rather than the two kilograms negotiated, because delivery of the full negotiated amount was not "reasonably foreseeable." Vasquez also argues that the Court should have sentenced him as a minimal participant under § 3B1.2(a) of the Guidelines, thereby reducing his offense level by four levels.[3]

## DISCUSSION

■ Under section 2255, a federal prisoner must establish that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255. It is well-settled that non-constitutional or non-jurisdictional claims, if not raised on direct appeal, are procedurally barred on collateral attack unless "the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley,* —— U.S. ——, ——, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976)) (quoting *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

■ In this case, Vasquez did not raise the claims set forth in the instant petition on direct appeal. Since the alleged misapplication of the Guidelines is neither constitutional nor jurisdictional in nature, *see Park v. United States,* 1993 WL 50938, at *1 (S.D.N.Y. 1993); *Ramos v. United States,* 1992 WL 350745, at *1 (S.D.N.Y.1992); *Fajardo v. United States,* 1992 WL 328933, at *2 (E.D.N.Y.1992), and since it does not constitute a fundamental defect which resulted in a complete miscarriage of justice, *see Park,* 1993 WL 50938, at *1; *Ramos,* 1992 WL 350745, at *1; *Fajardo,* 1992 WL 328933, at *2, the instant petition must be dismissed.[4]

■ In any event, there is no merit to Vasquez' claims. The government proved that the conspiracy involved a sale of two kilograms of cocaine to Hernandez, and that Rodrigo Vasquez played a significant role in facilitating that drug transaction. *See United States v. Hendrickson,* 26 F.3d 321, 332–37 (2d Cir.1994). The Court therefore set Vasquez' base offense level at 28. Pre–Sentence Report ("PSR") at 5; *see Hendrickson,* 26 F.3d at 333–34; *United States v. Negron,* 967 F.2d 68, 72 (2d Cir.1992); *see also United States v. Pimentel,* 932 F.2d 1029, 1031–32 (2d Cir.1991) (holding that two kilograms negotiated set base offense level, rather than one kilogram delivered). At the recommendation of the Probation Department, however, the Court then granted Vasquez a two-level reduction for minor participation pursuant to U.S.S.G. § 3B1.2(b).[5]

■ As at the time of sentencing, Vasquez again argues that he was entitled to a four-level reduction of his offense level pursuant to U.S.S.G. § 3B1.2(a), which provides for

---

**2.** By memorandum opinion and order dated February 15, 1995, the Court denied the motion to vacate the fine. *See Vasquez v. United States,* No. 93–2726, 877 F.Supp. 178 (S.D.N.Y. filed Feb. 15, 1995).

**3.** In this opinion, the Court refers to the Guidelines and policy statements in effect at the time of sentencing. *See United States v. Lara,* 905 F.2d 599, 602 (2d Cir.1990).

**4.** It is also well-settled that the failure to raise even constitutional claims on direct appeal "is itself a default of normal appellate procedure, which a defendant can overcome only by show-

ing cause and prejudice." *Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992). Indeed, Vasquez has failed to set forth any basis for his procedural default.

**5.** At sentencing, Vasquez did not argue that his relevant conduct should be limited to one kilogram of cocaine. As a result, the Court granted him a two-level reduction for minor participation. In so doing, the Court considered that Vasquez' role in the two kilogram transaction was less than some of the alleged participants. It is clear therefore that had the issue been raised, the Court would not have calculated his base offense level based upon one kilogram and granted him a reduction for minor participation.

such an adjustment when a defendant is a "minimal participant" in an offense. Where, as here, a defendant claims minimal participation, he must establish his reduced level of culpability by a preponderance of the evidence. *See United States v. Garcia,* 920 F.2d 153, 156 (2d Cir.1990) (per curiam); *see also United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992) (level of participation reviewed on clearly erroneous basis). The Guidelines clearly provide that a downward departure for minimal participation is only available to a defendant who lacks knowledge concerning the scope and structure of the enterprise, or one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, Application Note 1. The Guidelines also contemplate that a "downward adjustment for a minimal participant will be used infrequently." *United States v. Pitre,* 960 F.2d 1112, 1127 (2d Cir.1992) (quoting U.S.S.G. § 3B1.2, Application Note 2).

At sentencing, the Court determined that Vasquez did not qualify as a minimal participant and articulated its reasons for reaching that conclusion. Transcript of Sentencing at 5–10. Those reasons included, *inter alia,* that Vasquez met with Hernandez at the store and remained there during the ensuing negotiations, Tr. 80–83, that when the deal appeared in jeopardy, Vasquez negotiated the timing and location of the deal with Laboy, who was acting as the ultimate purchaser, *id.* at 87, 89, 199, and that Vasquez was present when Castano and Morales entered the store with the two packages of cocaine and when the participants departed to execute the deal, *id.* at 89–92, 96.

## CONCLUSION

For the reasons set forth above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**