101 F.3d 108
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Luis RODRIGUEZ, Defendant-Appellant.
 No. 95-1408.
 United States Court of Appeals, Second Circuit.
 March 12, 1996.
 
 APPEARING FOR APPELLANT: David V. Esposito, Hamden, CT.
 APPEARING FOR APPELLEE: Theodore B. Heinrich, Assistant United States Attorney for the District of Connecticut, Bridgeport, CT.
 D.Conn.
 AFFIRMED.
 Present: MINER, JACOBS, and CABRANES, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Luis Rodriguez ("Rodriguez") appeals from a judgment entered in the United States District Court for the District of Connecticut (Nevas, J.) convicting him of conspiring to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Rodriguez to a 60-month term of imprisonment, a four-year term of supervised release, and a $50 special assessment.
 
 
 5
 In 1993, a task force composed of federal, state, and local law enforcement officers (the "agents") began to investigate a gang known as the Latin Kings. One focus of the investigation was the residence of Jose Rodriguez located at 424 Ferry Street, New Haven, Connecticut. Jose Rodriguez, also known as "Baby Latin," is the brother of Rodriguez. During April and May of 1994, the agents intercepted telephone calls to and from Baby Latin's residence. During this time period, Baby Latin was conducting a heroin distribution operation at 203 Saltonstall Avenue in New Haven ("203 Saltonstall"). In June and July of 1994, Rodriguez and more than 20 other individuals were arrested in New Haven for their involvement with the heroin distribution operation at 203 Saltonstall. On December 8, 1994, a grand jury returned an indictment against Rodriguez and other individuals, charging them with various offenses relating to an extensive conspiracy to distribute narcotics. On March 16, 1995, Rodriguez pleaded
 
 
 6
 guilty to conspiring to distribute cocaine, cocaine base, and heroin. However, he reserved his right to contest the amount of heroin attributable to him for purposes of sentencing.
 
 
 7
 The pre-sentencing report ("PSR") prepared in Rodriguez' case stated that Baby Latin controlled the heroin operation at 203 Saltonstall and that Jose Lugo was one of his suppliers. The PSI stated that the operation at 203 Saltonstall was responsible for distributing approximately two grams of heroin per day from February 15, 1994 to June 28, 1994, for a total of 268 grams of heroin. The PSR also concluded that all 268 grams were attributable to Rodriguez because he was one of Baby Latin's two lieutenants in the operation, he knew of the scope of the operation, and he was aware of the total amount of heroin distributed.
 
 
 8
 On June 19, 1995, the district court held a sentencing hearing. At the hearing, Rodriguez challenged the quantity of heroin attributed to him. The district court found that there was "ample evidence to support the conclusion that this defendant had knowledge of the scope and breadth of this operation, and certainly it was reasonably foreseeable for this defendant to have knowledge with respect to any involvement in the distribution of large amounts of narcotics." The district court concluded that at least 100 grams of heroin were attributable to Rodriguez. This finding subjected Rodriguez to the five-year mandatory minimum sentencing provision of 21 U.S.C. § 841(b)(1)(B), and the district court sentenced Rodriguez principally to a 60-month term of imprisonment.
 
 
 9
 On appeal, Rodriguez claims that there was insufficient evidence for the district court to find that he had knowledge of the full scope of the narcotics distribution operation at 203 Saltonstall. Specifically, Rodriguez argues that Lugo was responsible for half of the drugs sold at 203 Saltonstall, and that because neither he, nor Baby Latin, had any connection to Lugo, the amount of heroin sold by Lugo cannot be attributed to him.
 
 
 10
 "[W]hen the calculation of the base offense level depends on the quantity of narcotics attributable to a defendant who was a member of a narcotics distribution conspiracy, we have concluded that all transactions engaged in by him or his coconspirator may be considered if the transactions were either known to him or reasonably foreseeable to him." United States v. Negron, 967 F.2d 68, 72 (2d Cir.1992). The defendant has the burden of proving lack of knowledge and lack of foreseeability. Id.
 
 
 11
 We believe that there was sufficient evidence to support the district court's finding that Rodriguez had knowledge of the full scope of the operation at 203 Saltonstall, including the extent of Lugo's involvement. First, there is ample evidence demonstrating that Lugo and Baby Latin were acting in concert. Both were members of the same gang and both were distributing heroin from 203 Saltonstall. In addition, the government introduced several transcripts of telephone conversations between Lugo and Baby Latin. These transcripts demonstrate that the two had telephoned each other on different occasions at 203 Saltonstall and had discussed details of the operation. Because Rodriguez has conceded that he was acting in concert with Baby Latin, the finding that Baby Latin and Lugo were acting in concert undermines Rodriguez' claim that Lugo was not part of the enterprise.
 
 
 12
 There also is ample evidence demonstrating that Rodriguez knew that Lugo was part of the enterprise. The government introduced transcripts of recorded telephone conversations at 203 Saltonstall between Lugo and Rodriguez. One of these transcripts indicates that Baby Latin had called Lugo at 203 Saltonstall and that the two discussed details of the operation, before Rodriguez, who also was present at 203 Saltonstall, got on the phone and spoke with Baby Latin. These transcripts demonstrate that Rodriguez knew that Lugo was a participant in the same operation at 203 Saltonstall. Therefore, we believe that there was sufficient evidence for the district court to find that Rodriguez had knowledge of the full scope of the enterprise and that the total amount of heroin sold at 203 Saltonstall was foreseeable to him.
 
 
 13
 We have considered Rodriguez' remaining contentions, and we find them all to be without merit.