**UNITED STATES of America, Appellee,**

v.

**Fernando Luis CARDENAS,
Defendant–Appellant.**

**Docket No. 89–1497.**

United States Court of Appeals,
Second Circuit.

Argued April 17, 1990.

Decided Oct. 1, 1990.

Richard B. Lind, New York City, for defendant-appellant.

Ira Belkin, Asst. U.S. Atty. for the E.D. N.Y., Brooklyn, N.Y. (Susan Corkery, Asst. U.S. Atty., Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal from a cocaine conspiracy sentence one of the issues raised is the failure of the district court to advise defense counsel prior to the date set for sentencing of its intent to upwardly depart from the sentencing guidelines. Because punishment, like medicine, is something a person likes to know about before it is administered, notice and a meaningful opportunity to be heard at sentencing are significant rights. At the time sentence was imposed our decisions had made manifest the value of prior notice of an intent to depart upwardly or downwardly from the sentencing guidelines.

This case illustrates why a sentencing judge should not keep her intention to deviate from the guidelines to herself since, absent advance notice of the sentencing court's plan to depart upwardly, neither defense counsel nor the attorney for the government will have sufficient opportunity to examine the legality of the proposed upward departure. Here, it turns out such

departure was unauthorized by the statute under which appellant was convicted; hence we must reverse and remand a portion of the sentence imposed upon the judgment of conviction.

## FACTUAL BACKGROUND

This case stems from a conspiracy to import 60 kilograms of cocaine to the United States from Panama by secreting it in the gasoline tank of a van. In June 1988 the U.S. Drug Enforcement Agency (DEA) learned of this criminal plan through a confidential informant in Panama who had been asked to deliver the vehicle along with another Panamanian, Carlos Ernest, to an undisclosed person in the United States for a fee of $40,000: $30,000 going to the informant and $10,000 going to Ernest. When the van arrived in Bayonne, New Jersey on August 1, 1988 DEA agents seized it without Ernest's knowledge, and replaced 54 of the 60 kilograms of cocaine with a sham substance.

The informant and Ernest arrived in New York separately and shared a hotel room near La Guardia Airport on August 15. The DEA had obtained an order for a wiretap on the room's telephone. On August 16 Ernest telephoned an individual named "Fernando"—the defendant, Luis Fernando Cardenas—in Queens but was told that he was in Los Angeles. Cardenas returned Ernest's call from Los Angeles explaining over the telephone that he had waited for Ernest for a week, and understood that he was to give Ernest "forty dollars" and Ernest "would deliver the little car."

That same evening Cardenas flew to New York arriving there on the morning of August 17. During the course of the day, Cardenas spoke to Ernest several times on the telephone, arranging for payment of the courier fee and delivery of the van. He told Ernest that he was having trouble raising the $40,000 but that he had contacted some people in Panama and Colombia for help in securing the money. Ernest had already hired a tow truck to move the vehicle because it was inoperable and, anxious about how he was to pay this expense,

insisted that Cardenas come and pick up the van and bring "a couple ... in other words, a thousand dollars ... just to have enough to give to [the tow truck operators] and to quiet them down." When Cardenas arrived at the La Guardia hotel that evening he was placed under arrest.

On January 3, 1989 he pled guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988) before the United States District Court for the Eastern District of New York (Raggi, J.). Defense counsel advised the court that the quantity of cocaine for which defendant should be sentenced was in dispute. The presentence report prepared by the Probation Department recommended that defendant be sentenced for the full 60 kilograms seized which had a net weight of at least 50 kilograms, resulting in a base offense level of 36.

The presentence report advocated a two-point addition for obstruction of justice—later deleted to reflect defendant's guilty plea to attempted escape—and a two-point reduction for acceptance of responsibility. In addition, the report indicated that upward departure under § 4A1.3 of the United States Sentencing Commission, *Guidelines Manual* (Jan.1988) (U.S.S.G.), might be warranted based upon defendant's illegal entrance into the United States in 1985. Cardenas objected to a sentence based on the full 60 kilograms. He stated that he believed that the cocaine transaction only involved three or four kilograms, and requested an evidentiary hearing on this issue.

On September 6, 1989 the district court held such a hearing, and the district judge noted at the beginning of the proceeding that the guidelines' base level "may not turn ... on what an individual defendant actually thought." DEA special agent Matthew Murphy testified for the government and Cardenas testified in his own defense. Defendant contended that he understood the operation to involve only three to four kilograms because he believed that the $40,000 that was to be paid by him to the informant was the purchase price, not the courier fee; Cardenas testified that

$40,000 purchases about three to four kilograms of cocaine. He also testified that statements he made to Carlos Ernest during the recorded telephone calls, which indicated Cardenas was playing a central role in the transaction—by communicating with various individuals in Panama, Colombia, and the United States in an effort to secure the necessary $40,000—were lies he told to Ernest in an effort to placate him.

In an oral ruling, the district court stated: "Having observed Mr. Cardenas' demeanor, having listened carefully to every explanation that he gave for his conduct in this case, I do not find his testimony credible." Thus, it found, contrary to defendant's claim, that "these telephone conversations on face value, portray Mr. Cardenas as a very active member of this conspiracy, one who was charged with picking up the drugs." The district judge therefore concluded that "Mr. Cardenas either actually knew that 60 kilograms was involved or even if he did not know the actual amount, simply did not care."

At sentencing on September 21, 1989 the district judge indicated that she was "satisfied that the recommendations made by [the] Probation Department are the guidelines that are applicable in this case," and that the total offense level was 34, with a term of incarceration from 151 to 188 months and three to five years of supervised release. The district court sentenced defendant to 151 months imprisonment, and then indicated its intent to depart upwardly with respect to defendant's term of supervised release because the guidelines did not adequately take into account that "[t]his ... defendant ... has entered the country illegally, engaged in narcotics trafficking while here, [and] attempted to escape from prison." As a consequence, it sentenced Cardenas, in addition, to ten years or 120 months of supervised release and a $50 special assessment.

## DISCUSSION

Cardenas challenges the length of his sentence based upon the district court's including the full 60 kilograms of cocaine in determining the applicable guidelines range. Appellant also contends that it was error for the district court to depart upwardly by imposing an additional term of supervised release without giving notice of that intent.

### I Quantity of Narcotics

The present case involves an incomplete conspiracy to distribute cocaine. Under the guidelines in effect at the time of defendant's sentencing, *see United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990), the sentencing court should select the same level "as if the object of the conspiracy ... had been completed." U.S.S.G. § 2D1.4(a). Cardenas argues that the 60 kilograms found in the van should not be counted because he did not know the transaction involved that quantity of cocaine. He relies upon application of note 1 to § 2D1.4 that reads in pertinent part: "If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable."

Defendant's assertion is grounded on an improper understanding of the guidelines. The cited application note simply reflects the common law principle first articulated in *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), that a conspirator may only be held liable for the substantive crimes of his co-conspirators if they were done in furtherance of the conspiracy and were known or reasonably foreseeable to him. The Sentencing Commission sought through this commentary to protect, for example, a narcotics conspirator from being sentenced for an unplanned bank robbery committed by his co-conspirators that was not reasonably foreseeable by him. Such is not the present case. Cardenas was sentenced based upon *his own* conduct, not upon the conduct *of others*. Here the district court found that—during the period at issue—Cardenas himself knew he was acting in furtherance of a conspiracy to distribute cocaine regardless of his knowledge of the amount.

Cardenas makes the additional argument that the court improperly considered the full 60 kilograms based upon the following statement in application note 1 of § 2D1.4: "If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Defendant contends that this case involved negotiation "to traffic" in cocaine because it involved "the passing of goods from one person to another," *United States v. Adames*, 901 F.2d 11, 12 (2d Cir. 1990), and that the amount under negotiation was three to four kilograms. This argument is unpersuasive because there is no evidence that Cardenas *negotiated* to receive only three to four kilograms. To the contrary, the evidence suggests Cardenas' unequivocal agreement to pick up and take exclusive possession of a van containing a much larger amount of cocaine. No negotiation over quantity occurred.

■ Under the Guidelines, the district court must first determine the base offense level. *See* U.S.S.G. § 1B1.2(a). The statute under which Cardenas was convicted, 21 U.S.C. § 846, is the statute underlying § 2D1.4 of the Guidelines. Section 2D1.4 requires the court to apply the same base offense level as would apply had the conspiracy been completed. Under § 2D1.1 of the Guidelines, the base offense level for an offense involving the unlawful trafficking or importing of between 50 and 150 kilograms of cocaine is 36. The Guidelines then require the district court to determine the applicable guideline range, considering relevant conduct under § 1B1.3. U.S.S.G. § 1B1.2(b). The district court properly adjusted the base offense level upwards two levels for obstruction of justice and then downwards two levels for acceptance of responsibility, for a resulting offense level of 36. U.S.S.G. §§ 3C1.1, 3E1.1(a). Defendant's argument that he cannot be held responsible for the entire 60 kilograms may not succeed because we have held that a district court *must* consider *the entire quantity* of narcotics in the charged conspiracy. *See United States v. Schaper*, 903 F.2d 891, 896–99 (2d Cir.1990) (defen-

dant liable for entire quantity of narcotics traded as part of the same scheme, even if the defendant was not actually charged with the entire quantity). It is not required to find that appellant had knowledge of the exact quantity of narcotics involved in the conspiracy so long as—in considering defendant's role in the narcotics part of the charged conspiracy—the district court determines that it is convinced by a preponderance of the evidence that defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy. *Cf. Paulino*, 873 F.2d at 25 (upholding sentence based upon the entire quantity of narcotics found at crime scene notwithstanding that defendant "possessed minimal knowledge of the scope of the transaction and had minimal control over its execution").

The district court properly concluded that the government had met its burden of showing the defendant knew that this conspiracy involved 60 kilograms or could have reasonably foreseen such amount, if he had cared to inquire. Hence, it correctly considered the full quantity of 60 kilograms of cocaine in selecting the applicable guidelines' base level.

## II Upward Departure

### A. *Supervised Release*

■ Before considering the second issue raised—the lack of notice before the district court upwardly departed—we deal with the sentence actually imposed by that departure. In this case the upward departure consisted of an additional term of ten years of supervised release. This term exceeds the three-year statutory maximum and is therefore an illegal sentence.

Both parties submitted letters subsequent to oral argument contending that the statutory scheme permits a three-year maximum term of supervised release. The three-year maximum for those convicted of conspiracy to distribute narcotics, 21 U.S.C. § 846, differs from the life term permitted for those convicted of distributing narcotics, 21 U.S.C. § 841(b)(1)(C), and results from an anomaly in the statutory scheme

that was corrected on November 18, 1988. Cardenas pled guilty to violating § 846 in August 1988, at which time the commission of the crime here at issue allowed for "punishment by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846 (1982). In *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the Supreme Court held that this version of § 846 would not permit the imposition of a term of special parole when such term was prescribed by the object offense because special parole was not "imprisonment" or a "fine." *Id.* at 390, 100 S.Ct. at 2253.

By implication this holding related with equal force to terms of supervised release. *See, e.g., United States v. Latham*, 874 F.2d 852, 864 (1st Cir.1989); *United States v. Molina–Uribe*, 853 F.2d 1193, 1197–98 (5th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Smith*, 840 F.2d 886, 889–90 & n. 3 (11th Cir.), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988); *but see United States v. Brundage*, 903 F.2d 837, 843 (D.C.Cir.1990); *United States v. Torres*, 880 F.2d 113 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990).

Thus, although a violator of the object offense of distributing narcotics could be sentenced for any period from a term of supervised release up to a life sentence, *see* 21 U.S.C. § 841(b)(1)(C); *cf. Walberg v. United States*, 763 F.2d 143, 149 (2d Cir. 1985), a violator of the conspiracy offense under § 846 could not be sentenced to a term of supervised release under the authority of § 841(b)(1)(C) at the time of the subject conspiracy. Congress corrected this inconsistency in the statutory scheme by amending § 846 to read: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the *same penalties* as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Pub.L. No. 100–690, 102 Stat. 4377 (Nov. 18, 1988) (emphasis supplied).

Because no term of supervised release is authorized by § 846, the only statutory authority providing for supervised release is the catch-all provision 18 U.S.C. § 3583(b) that indicates a maximum term of three years supervised release may be imposed for Class C or D felonies. Cardenas was convicted of a Class C felony since the maximum term of incarceration he may serve is 20 years. *See* 21 U.S.C. § 841(b)(1)(C) (20–year maximum term); 18 U.S.C. § 3559(a)(3) (Class C felonies less than 25 but 10 or more years). Thus, the district court may only sentence Cardenas up to a term of three years supervised release.

The Probation Department incorrectly calculated the maximum term of supervised release under the guidelines as five years based upon the mistaken assumption that defendant was convicted of a Class A or B felony. But, because Cardenas, as noted, was convicted of a Class C felony the guidelines in effect at that time permitted a term of supervised release of "at least two years but not more than three years." U.S.S.G. § 5D3.2(b)(2). The guidelines' sentencing range may not exceed the statutory maximum of three years supervised release. *See* 28 U.S.C. § 994(b)(1) ("The [Sentencing] Commission, in the guidelines ..., shall, for each category of offense involving each category of defendant, establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code."). Hence, this sentence must be reversed.

### B. *Lack of Notice*

■ Although reversal of the sentence of supervised release is mandated because it is not authorized, we note that the district court also failed to give defense counsel advance warning of its intention to depart upwardly.

Rule 32 of the Federal Rules of Criminal Procedure grants a "reasonable time" to defense counsel and the attorney for the government to comment on the probation officer's determination where some "factor important to the sentencing determination

is not capable of being resolved at that time," *see* Rule 32(a)(1), and further provides that at least 10 days before sentencing defendant and defendant's counsel be given a copy of the presentence investigation, *see* Rule 32(c)(3)(A). These same considerations of notice and a meaningful opportunity to be heard are essential to achieving uniformity, fairness, and accuracy in sentencing apply with equal force to proposed upward or downward departures from the Guidelines. *See Kim*, 896 F.2d at 681 ("sentencing judge contemplating an upward departure should inform the defendant of the factors that the judge is planning to rely upon and offer some brief explanation as to why these factors warrant a departure"); *United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989) (same); *United States v. Cervantes*, 878 F.2d 50, 55–56 (2d Cir.1989) (sentencing judge should notify defendant of intent to depart upwardly "especially where the judge relies upon factors not addressed in the presentence report or which, if mentioned, have been recast by the judge"); *see also United States v. Jagmohan*, 909 F.2d 61, 63–64 (2d Cir.1990) (giving the government equal right to notice and an opportunity to be heard on the court's intention to depart downwardly from the guidelines). Consequently, it can be clearly seen that had counsel for the parties been advised ahead of time, they would have had at least an opportunity to bring to the sentencing court's attention the applicable statutory three-year maximum period for supervised release.

## CONCLUSION

Accordingly, we affirm the district court's sentence based upon the full 60 kilograms of cocaine found in the van; we reverse and vacate insofar as the sentence imposed a ten-year term of supervised release and remand to the district court for such further proceedings as it, in the exercise of its discretion, deems appropriate.

Affirmed, in part, reversed and remanded in part.