**UNITED STATES of America**

v.

**Pedro SANCHEZ and Mario Chalarca, Defendants.**

**No. 94 CR 1040 (SAS).**

United States District Court,
S.D. New York.

Feb. 29, 1996.

Opinion Reconsidering Decision
March 13, 1996.

Daniel C. Becker, Assistant United States Attorney, New York City, for U.S.

Alan E. Kudisch, Kew Gardens, New York, for Defendant Mario Chalarca.

Marvin E. Schechter, New York City, for Defendant Pedro Sanchez.

## *OPINION*

SCHEINDLIN, District Judge.

Defendant Mario Chalarca ("Chalarca") was convicted after trial of a single count of conspiring to distribute or possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Chalarca pled not guilty prior to trial, and maintained his innocence at trial, testifying in his own defense. He continues to maintain his innocence at the sentencing stage. He has been in custody since his conviction on June 13, 1995.

A number of issues have been raised relating to his sentencing. Defense counsel has submitted three letter briefs (October 3, November 20 and December 15, 1995); the Government has responded with two letter briefs (October 29 and November 20, 1995). Both the Government and Chalarca have offered evidence, and at the hearing on February 13, 1996, each counsel had the opportunity to argue on his client's behalf. Sentencing has

been adjourned to March 4, 1996, pending resolution of the disputes raised. This opinion addresses those disputes.

## FACTUAL BACKGROUND

This brief factual summary is based on the presentence investigation report prepared by the Probation Department on September 15, 1995 and revised on October 4, 1995. On September 14, 1994, and on several occasions thereafter, an undercover agent ("UC") met with a woman known as Alba Ortiz. Ortiz advised the UC that she was planning to send 212 kilograms of cocaine, packaged in eleven suitcases, from Texas to New York. She further advised him that she would be "paid" 12 kilograms for her efforts. The UC arranged for the cocaine to be seized in Texas. The lab report reveals that the seized cocaine was 90% pure, indicating a very high quality of cocaine. In its place the UC transported the eleven suitcases to New York, now filled with a look-alike, non-controlled substance.

On September 18, 1994, the undercover met with Ms. Ortiz, who stated that she had found a buyer for the 12 kilograms. She was then arrested, along with others who had arrived with her to meet the van. A diary/telephone directory was seized from her purse, as well as a pager. Several times on September 18 and 19, the pager registered Code "55". On September 20, 1994, a confidential informant ("CI") contacted the user of Code "55" (whose number appeared on the pager) and arranged a meeting. Code "55" turned out to be the defendant Pedro Sanchez. At the meeting, the CI informed Sanchez that he was in charge of "the woman's" merchandise and they discussed the upcoming sale. Sanchez told the CI that he was collecting money for the transaction and that he would let the CI know how much money

he had. On September 21, 1994, Sanchez told the CI that he still did not have the money. The CI responded that if he did not have the money soon, the CI would sell the cocaine to someone else. On September 22, 1994, Sanchez indicated that he had raised $70,000.

Sanchez and the CI agreed to meet later that day at a Wendy's parking lot in Queens in order to purchase the drugs. The CI, together with DEA surveillance teams, were the first to arrive at the parking lot. Shortly thereafter, Sanchez and the defendant Chalarca arrived in a Jeep driven by Chalarca. Sanchez left the vehicle to meet with the CI. The two of them then returned to the Jeep in response to the CI's request to see the money. Sanchez, sitting in the front passenger seat, asked Chalarca to hand him a black bag from the back seat. Chalarca handed him the bag, which was then unzipped, revealing what appeared to be $70,000 in cash. The CI counted by tens to 70,000. After the CI viewed the money, he gave the arrest signal and both defendants were arrested. All contacts between the CI and Sanchez were tape recorded. These recordings and the accompanying transcripts were a part of both the trial record and the record at this sentencing proceeding.

Sanchez pled guilty on May 16, 1995. At his plea, Sanchez stated that Chalarca did not know anything about the drug deal and had nothing to do with it. More recently, at his "safety valve" interview and at a sentencing hearing, Sanchez again stated that Chalarca knew nothing about the drug deal and was not involved.[1] However, according to the testimony of Agent David McNamara, one of the arresting officers, Sanchez made a post-arrest statement that Chalarca had the contacts to sell the drugs. Sanchez denies

---

1. The "safety valve" interview is required before a defendant is eligible for the benefits of 18 U.S.C. § 3553(f), which permits sentencing without regard to the required mandatory minimum sentences for defendants who meet certain criteria. One of those criteria is that a defendant truthfully tell the Government all he knows about the events surrounding the charged conduct. At the time Sanchez told the Government that Chalarca was not involved in the drug deal, he was aware that based on that statement the Govern-

ment would recommend that he not be given the benefit of the safety valve. Sanchez knew that the Government would instead recommend sentencing him to the mandatory minimum ten year term of imprisonment. Similarly, when Sanchez testified at his sentencing hearing that Chalarca was not involved in the drug deal, he risked a finding by the Court that he was not entitled to the benefit of the safety valve based on his lack of truthful disclosure to the Government.

making this statement and denies the accuracy of the statement.

The Government seeks to hold both defendants liable for possession with intent to distribute the entire 12 kilograms of cocaine. If Chalarca is responsible for this amount, then he faces a mandatory minimum sentence of ten years imprisonment as required by 21 U.S.C. § 841(b)(1)(A) [more than 5 kilograms of cocaine]. If he is responsible for whatever amount of cocaine could have been purchased by the $70,000 found in the Jeep, then he faces a mandatory minimum sentence of five years imprisonment as required by 21 U.S.C. § 841(b)(1)(B) [more than 500 grams or ½ kilogram of cocaine].

### THE SENTENCING ISSUES

■ Chalarca has raised several issues relating to sentence. It is well known that sentencing accountability is based on different principles than criminal liability. For sentencing purposes with respect to a conspiracy conviction, "a district court must make a particularized finding as to whether the [alleged quantity] was foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574–75 (2d Cir.1995); *see also United States v. Martinez*, 987 F.2d 920, 926 (2d Cir.1993) ("we hold that the same 'reasonable foreseeability' standard of the Guidelines must be applied to sentencing for conspiracy under 21 U.S.C. § 846"). A defendant in a conspiracy case may only be sentenced for that quantity of drugs that a court finds by a preponderance of the evidence was reasonably foreseeable by that defendant. When a defendant claims that he is not responsible for the entire amount of narcotics attributable to the conspiracy, he bears the burden of establishing his lack of knowledge and lack of foreseeability. *United States v. Hendrickson*, 26 F.3d 321, 334 (2d Cir.1994); *United States v. Negron*, 967 F.2d 68, 72 (2d Cir.1992).[2] Chalarca contends that the 12 kilograms of cocaine that Sanchez was negotiating to purchase were not foreseeable to him. In fact, Chalarca contends that he could not foresee

even the amount of cocaine that $70,000 could purchase.

Chalarca next contends that if the Court finds that he could foresee a specific quantity of cocaine, that amount should be approximately 3.5 kilograms (warranting a five year mandatory sentence) as opposed to 12 kilograms (warranting a ten year mandatory sentence). Chalarca further argues that he should be given a four level reduction, pursuant to U.S.S.G. § 3B1.2(a). Finally, Chalarca seeks a downward departure based on less than minimal participation in the charged conduct, extraordinary family circumstances, and lack of any proprietary interest in the narcotics or money.

The Government, in turn, seeks a two level increase pursuant to U.S.S.G. § 3C1.1, contending that Chalarca committed perjury in testifying at trial that he had no knowledge of this drug transaction. Application Note 1 to this section states that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant."

### A. Foreseeable Quantity

The Sentencing Guidelines require that the base offense level shall be determined on the basis of "all acts ... committed ... by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(A) and (B). Chalarca bears the burden of establishing his lack of knowledge and lack of foreseeability with respect to the quantity of drugs.

■ A conspiracy, by definition, is not a substantive offense. Nor was any substantive offense charged against Chalarca. In short, no narcotics were bought, no narcotics were sold, and neither Chalarca nor Sanchez possessed any narcotics. Thus, the only offense at issue is conspiracy to possess and distribute cocaine. Thus, as stated by the Government in its letter briefs and at the

---

**2.** The determination of the quantity of drugs for which a defendant is responsible for sentencing purposes applies equally to the Sentencing Guidelines and to the statutory mandatory minimums, since both are based on the quantity of narcotics. *See United States v. Ekwunoh*, 813 F.Supp. 168, 173–74 (E.D.N.Y.), *vacated on other grounds*, 12 F.3d 368 (2d Cir.1993).

sentencing hearing, I am concerned only with relevant conduct as defined by § 1B1.3(a)(1)(B).[3]

■ In an effort to persuade this Court that the quantity of drugs to be purchased by Sanchez was not foreseeable to Chalarca, Chalarca relies principally on his own testimony. He has consistently sworn that Sanchez, his cousin, asked Chalarca to drive him on some errands. Chalarca testified that he often helped his cousin with small chores and errands. In addition, Sanchez swore at his own sentencing hearing that Chalarca did not know anything about the drug deal. Finally, Chalarca points to the absence of any contrary evidence. There are no tape recordings of any conversations between Chalarca and any CI, undercover agent, or for that matter Sanchez. No eyewitness ever saw or spoke with Chalarca until the five minutes

prior to the arrest. The evidence at trial and the hearing reveals that Chalarca was not seen or heard until the hour preceding the arrest.

The following facts gleaned from the Presentence Report provide some corroboration of Chalarca's testimony. Chalarca has been employed full time for the past eight years (ages 19 through 27) as a housekeeper at Howmedica (a medical center), earning approximately $15 per hour. Chalarca has no prior criminal record. The Presentence Report contains no hint of any prior involvement with the illegal drug business, nor has the Government offered any such evidence.

In response, the Government presented evidence and arguments that it believes demonstrate that Chalarca could have reasonably

3. While the Government has never suggested that § 1B1.3(a)(1)(A) should apply, I shall nonetheless address this possibility. This section applies to acts committed by the defendant or acts that he aided and abetted. The first question is whether a defendant can aid and abet a conspiracy. This question has been answered both ways. *Compare United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir.1994) ("Since conspiracy is a substantive offense, a defendant may be found to have aided or abetted a conspiracy") *with United States v. Moreno*, 710 F.Supp. 1136, 1137 (E.D.Mich.1989), *aff'd and remanded*, 899 F.2d 465 (6th Cir.1990) ("References to 'aided and abetted' were omitted because one cannot aid and abet a conspiracy"). This Circuit's response to this question is not entirely clear. In a 1952 case, the Court of Appeals found that the defendants "aided and abetted the conspiracy by themselves making illegal sales." *United States v. Tramaglino*, 197 F.2d 928, 930 (2d Cir.), *cert. denied*, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952). More recently, the Court of Appeals wrote that "[the defendant] was charged with the inchoate offense of conspiracy and the substantive offense of using the telephone to advance a scheme." *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir.1986). In my view, a defendant cannot aid and abet a conspiracy.

The second question, however, is whether the defendant committed the offense himself so as to warrant the application of § 1B1.3(a)(1)(A). To some extent, I believe that this question is closely related to the first question. A conspiracy, after all, is an agreement to do something illegal, such as distribute narcotics. Indeed, there is no need to prove an overt act in furtherance of a § 846 conspiracy as the conspiracy to distribute narcotics is a specific crime. *See United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d

793 (1976). While Chalarca clearly committed the offense of conspiracy, his acting as the driver on the date of the intended purchase does not bring his conduct under the rubric of § 1B1.3(a)(1)(A). The Tenth Circuit recently reached the opposite conclusion in *United States v. Lockhart*, 37 F.3d 1451 (10th Cir.1994). In *Lockhart*, the defendant pled guilty to a single count of conspiring to possess with intent to distribute 1.5 kilograms of cocaine. In finding that § 1B1.3(a)(1)(A) was applicable, the court began by quoting from Application Note 2 to Section 1B1.3.

While note 2 states that the foreseeability of the drug quantity attributed to the defendant is relevant in some cases of jointly undertaken criminal activity, it also states that '[t]he requirement of reasonable foreseeability applies only in respect to the conduct (i.e., acts and omissions) of others.... It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A).' 37 F.3d at 1454 (alterations in original). The court then found that the quantity of drugs attributed to defendant arose from conduct in which he personally participated. *Id.*

Assuming, *arguendo*, that the court applied the right section (which I doubt), *Lockhart* is readily distinguishable from the case presented here. In *Lockhart*, the defendant drove the car and sat in it while his co-conspirator purchased a bag containing cocaine and brought the bag to the car. *Lockhart*, 37 F.3d at 1453. Here, by contrast, there was no substantive offense of possession arising from the purchase of cocaine. The only conduct which Chalarca facilitated was the conspiracy. Thus Chalarca's relevant conduct is to be determined under § 1B1.3(a)(1)(B). *See* discussion at 993–994, *supra*.

foreseen that Sanchez intended to purchase 12 kilograms of cocaine. The Government first argues that on several occasions during his taped conversations with the CI, Sanchez told the CI that he would bring his cousin with him when he met the CI to buy the drugs. During one conversation he described his cousin with a description fitting Chalarca. He told the CI that his cousin would go with the CI to an apartment to pick up the drugs. The Government further argues that Chalarca was present with Sanchez on the day of the purchase, thereby corroborating the earlier taped statements. In addition, the Government notes that Chalarca was present when Sanchez showed the money to the CI. The Government also relies on Sanchez' previously described post-arrest statement. Finally, the Government believes that Chalarca has evidenced his guilty knowledge by fleeing at the time of his arrest and by lying during his trial testimony with respect to the time he arrived at Wendy's and the absence of spaces in the Wendy's parking lot.

On balance, I find that Chalarca has demonstrated by a preponderance of the credible evidence that he had no actual knowledge of the quantity of narcotics involved in this conspiracy and that he could not have reasonably foreseen the quantity involved.[4] Assuming, as I must, that Chalarca conspired with his cousin to purchase a quantity of drugs, there is simply no credible evidence that he was aware of or participated in any discussions regarding the amount. There is no evidence that Chalarca discussed the quantity of drugs with Sanchez or the CI.[5] In addition, I specifically credit Chalarca's testimony at both the trial and the sentencing hearing that he did not know the terms of the transaction. *See generally* Trial Tr. at 345, 364–65; Hearing Tr. at 37. There is no

evidence that he ever saw any drugs or had anything to do with raising the money to purchase the drugs. While he did see the money minutes before the arrest, this does not mean that he knew what drug or what quantity of drugs the money would be used to purchase. Similarly, fleeing at the time of arrest does not evidence any knowledge of the quantity of drugs to be purchased. Rather, it evidences a perfectly reasonable fear of the consequences based on his realization that what Sanchez was doing "wasn't good" (Trial Tr. at 345) although Chalarca was not sure exactly what it was.

I give no weight to Sanchez' alleged post-arrest statement. Sanchez testified that he was confused and stunned when he spoke to the agents following his arrest. He denies making the statement and states that if he said any such thing it was not true. Under the circumstances, I find Sanchez' testimony credible. He was arrested for the first time and was informed that he was facing a lengthy period of incarceration. He was being questioned in Spanish and English and answered in both languages. It is not at all unlikely that he was confused or that the agents misunderstood what he said. Since that time, however, with potentially devastating consequences to the length of his own sentences he has repeatedly sworn that Chalarca was not involved in the drug deal. These statements have the ring of truth. With so much to be gained by implicating Chalarca, namely a complete escape from a mandatory minimum sentence, Sanchez has no incentive to minimize Chalarca's involvement and every incentive to implicate Chalarca had he truly been involved in the drug deal.

### B. *Offense Level*

The next question, then, is how to set the appropriate offense level. Because I con-

---

**4.** Because I conclude that Chalarca neither knew nor could foresee any particular quantity of drugs, I do not reach the question of what amount of drugs could be purchased by the $70,000 found in the car.

**5.** While Sanchez discussed his "cousin's" planned presence at the buy, this does not mean that Chalarca had agreed to be present. It is not unexpected that in the course of negotiations a buyer or seller will say things that are not true,

in order to convince the other that the speaker is ready and able to proceed with the transaction. Once again, although Sanchez' statements are admissible against Chalarca for the purpose of determining guilt or innocence, his statements in the course of the conspiracy do not establish Chalarca's knowledge. In addition, there is nothing in the taped conversations indicating that Chalarca was aware of the amount of drugs being discussed between Sanchez and the CI.

clude that Chalarca had no knowledge of any particular quantity of cocaine and that no particular quantity was foreseeable to him, the appropriate offense level is 12, pursuant to U.S.S.G. § 2D1.1(c)(14). This level represents the least amount of cocaine that appears on the Drug Quantity Table.

## C. *Remaining Sentencing Issues*

■ The defendant has requested that I consider an additional reduction based on defendant's role in the offense, pursuant to § 3B1.2(a). With respect to the concerted activity for which defendant is being sentenced, namely the single purchase contemplated for September 22, 1994, I decline to find that defendant played a mitigating role. I have already taken Defendant's role into account in determining his offense level. Based on Chalarca's lack of knowledge and inability to foresee the purchase of a specific quantity, Chalarca is not being held responsible for assisting Sanchez to purchase $70,000 worth of cocaine. Thus, I have already considered his role in the offense.

■ The Government has requested that I consider increasing the offense level because of the defendant's alleged perjury. Evaluating his testimony in the light most favorable to the defendant, I do not find that Chalarca willfully obstructed the administration of justice during the prosecution of this action. During Chalarca's testimony he admitted his relationship with his cousin Sanchez and his [Chalarca's] presence during the events of September 22, 1994. The only material allegation he denied was his knowing participation in a conspiracy to possess and distribute narcotics. I cannot say that this testimony was perjurious. I do not consider Chalarca's testimony with respect to the time he arrived at Wendy's or where he parked to be material. Thus, I reject the Government's contention that there should be an upward adjustment of two levels for obstruction of justice.

Therefore, at the time of sentencing, the applicable Guidelines range will be 10 to 16 months of incarceration. I have considered Chalarca's request for a downward departure

based on less than minimal participation in the charged conduct, extraordinary family circumstances, and lack of any proprietary interest in the narcotics or money. However, I am satisfied that the above-stated Guidelines range is appropriate and that under these circumstances, there is no reason for a downward departure.

## *OPINION ON RECONSIDERATION*

After months of urging that U.S.S.G. § 1B1.3(a)(1)(B) is the proper section to be applied in evaluating the relevant conduct of defendant Mario Chalarca for sentencing purposes,[1] the Government now argues, upon a motion to reconsider this Court's Opinion of February 29, 1996 ("Opinion" or "February 29 Opinion"), that the proper section is U.S.S.G. § 1B1.3(a)(1)(A). Based on this new argument, and on a firm disagreement with the Court's findings with respect to § 1B1.3(a)(1)(B), should it apply, the Government seeks reconsideration of the Court's February 29 Opinion. Because the issues raised are important to the Government, the Defendant and the Court, reconsideration is warranted.

The necessary factual background is fully set forth in the Court's February 29 Opinion. Familiarity with that Opinion is assumed. Chalarca was to be sentenced on March 4, following the release of the Opinion. At the sentence, the Government urged the Court to reconsider. The Court permitted the Government to submit a Memorandum of Law in support of its request for reconsideration. The Government filed a thirty-one page memorandum on March 6, 1996. Defendant responded on March 12, 1996. No additional hearing is required.

## I. *Relevant Conduct*

U.S.S.G. § 1B1.3(a) defines relevant conduct. Under this section, a defendant's offense conduct "shall be determined" on the basis of

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

1. *See* Transcript of Hearing, February 13, 1996, at 115.

(B) in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

The question now confronting the Court is whether to apply § (a)(1)(A) or § (a)(1)(B) in determining the proper offense conduct for defendant Chalarca.

In my earlier Opinion, I applied § (a)(1)(B), in large part because the Government urged me to do so. In applying this Section, I found that defendant Chalarca had proved by a preponderance of the evidence that he did not know nor could he reasonably have foreseen the quantity of drugs involved in the conspiracy. Despite the fact that no party argued the applicability of § (a)(1)(A), I also addressed this Section in a lengthy footnote, holding that it should not be applied in determining Chalarca's relevant conduct. The earlier Opinion was drafted without the benefit of the Government's briefing of the issue.

The Government now cites *United States v. Cardenas,* 917 F.2d 683 (2d Cir.1990), a case it deems to be controlling on the question to be decided. The Government also relies on a number of recent cases outside this Circuit that have squarely addressed this issue. *See United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996); *United States v. Lockhart,* 37 F.3d 1451 (10th Cir.1994); *United States v. Corral–Ibarra,* 25 F.3d 430 (7th Cir.1994).[2] However, the Government is unable to cite any case in this Circuit which has explicitly addressed the question now before this Court.

### A. *Second Circuit Case Law*

*Cardenas* certainly does not decide the question posed. In *Cardenas,* defendant pled guilty to conspiracy to distribute cocaine

in violation of 21 U.S.C. § 846. Defendant, however, contested the quantity of drugs for which he should be sentenced. Relying on Application Note 1 to § 2D1.4, Defendant argued that he should not be responsible for the full quantity of drugs which was the object of the conspiracy. On appeal, the court held that this section dealt only with criminal liability, not sentencing accountability. However, without ever addressing the relevant conduct definitions contained in either §§ 1B1.3(a)(1)(A) or 1B1.3(a)(1)(B), the court held that

[i]t is not required to find that appellant had knowledge of the exact quantity of narcotics involved in the conspiracy so long as—in considering defendant's *role in the narcotics part of the charged conspiracy*— the district court determines that it is convinced by a preponderance of the evidence that defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy.

*Cardenas,* 917 F.2d at 687 (emphasis added). The court went on to note that the Government had met "its burden of showing the defendant knew that this conspiracy involved 60 kilograms or could have reasonably foreseen such amount." *Id.* Thus, despite the fact that defendant was an active participant in the transaction, and was sentenced, in the court's words, "upon *his own* conduct, not upon the conduct *of others,*" the court nonetheless applied a foreseeability analysis. *Id.* at 686 (emphasis in original). The *Cardenas* holding has been repeatedly followed in this Circuit, which requires a court to consider the entire quantity of narcotics in the charged conspiracy and to make a finding by a preponderance of the evidence that defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy. *See, e.g., United States v. Hendrickson,* 26 F.3d 321, 334 (2d Cir.1994); *United States v. Lanni,* 970 F.2d 1092, 1093 (2d Cir.1992); *United States v. Negron,* 967 F.2d 68, 72 (2d Cir.1992). Courts in this Circuit also require a defendant to demonstrate by a preponder-

---

**2.** While the Government does not rely on *United States v. Pessefall,* 27 F.3d 511 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1154, 130 L.Ed.2d 1112 (1995), which addresses the same issue, I nonetheless discuss this case (together with those relied on by the Government) at pp. 998–999, *infra.*

ance of the evidence that he is *not* responsible for the entire quantity of drugs involved in the conspiracy. Finally, in *United States v. Martinez*, 987 F.2d 920 (2d Cir.1993), the Court of Appeals held that the "reasonable foreseeability" standard of the Guidelines must be applied in determining the applicability of the mandatory minimum sentences under 21 U.S.C. § 841(b).

### B. *Case Law from Other Circuits*

Other Circuits have, however, addressed the question now before the Court. There is no doubt that in the Seventh, Tenth and Eleventh Circuits, the courts have rejected a foreseeability analysis when a defendant is sentenced for his own acts—*i.e.* acts committed by him. *United States v. Corral–Ibarra*, 25 F.3d 430 (7th Cir.1994), is perhaps the most instructive. In that case, defendant Herrera was involved in a conspiracy to purchase 50 kilograms of cocaine. In considering whether to apply § (a)(1)(A) or § (a)(1)(B), the court concluded that § (a)(1)(A) was appropriate because of the acts committed by Herrera. In analyzing the illustrations contained in the Application Note to § 1B1.3(a)(1), the court found that the critical distinction was between direct and remote involvement in the illegal activity, and that only the latter will trigger a reasonable foreseeability analysis.[3] The court found that Herrera boarded a houseboat to test a "sample" of the cocaine and then verified its adequacy over the telephone to a coconspirator. Thus, Herrera played a "direct, personal role in furtherance of the attempt to obtain and distribute a large quantity of cocaine." *Corral–Ibarra*, 25 F.3d at 438. Nonetheless, the court was somewhat troubled by the resulting sentence, given that Herrera had no criminal history and that his co-conspirators deliberately kept him in the dark about the amount of cocaine involved in the deal. The court noted that "[t]he severity of the resulting sentence ... gives us pause in the circumstances of this case." *Id.*

*United States v. Pessefall*, 27 F.3d 511 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1154, 130 L.Ed.2d 1112 (1995), is similar. There, the defendants appealing their sentences had pled guilty to personally carrying numerous duffel bags of cocaine in unloading a ship—factually indistinguishable from "Defendant A" in Illustration (a) to Application Note 1 of § 1B1.3(a)(1). Based on their personal participation, the court held each was responsible for the entire quantity of drugs (both real and fake) that were offloaded. *See also United States v. McCullah*, 76 F.3d 1087 (10th Cir.1996) (defendant personally participated in kidnapping and murder for the purpose of recovering a quantity of drugs).

In *United States v. Lockhart*, 37 F.3d 1451 (10th Cir.1994), the Tenth Circuit decided a case somewhat similar to the one before this Court. There, a defendant pled guilty to conspiracy to possess with intent to distribute cocaine. At sentence, defendant argued that he should not be held accountable for the quantity of drugs which was the object of the conspiracy, namely 1.5 kilograms, since he could not reasonably foresee this quantity. Lockhart was the driver of a car which was first observed cruising in the vicinity of the Kansas City bus station. This observation was made by Kansas City police, who had a tip that a female bus passenger arriving from Los Angeles was transporting cocaine. This same car then met the bus passenger (who was carrying a duffel bag of cocaine) in Lawrence, Kansas. There, Givens, who was riding in the car driven by Lockhart, met the female and was given the bag of cocaine. Givens and Lockhart were then arrested in possession of the bag. *Lockhart*, 37 F.3d at 1452–53.

The court began its analysis of § 1B1.3 by reviewing Application Note 2, which states that "[with] respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of

---

**3.** The court held that Herrera's conduct was most akin to that described in Illustration (a) to Application Note 1 wherein Defendant A, convicted of importation of marihuana, was one of ten off-loaders of a large shipment of marihuana. The illustration states that "Defendant A is held accountable for the entire one-ton quantity of marihuana on the boat because he *aided and abetted* the unloading, and hence the importation, of the entire shipment." Interestingly, this illustration deals with aiding and abetting a substantive offense.

contraband with which he was directly involved...." The same Note goes on to state that

> [t]he requirement of reasonable foreseeability applies only in respect to the conduct (*i.e.* acts and omissions) of others.... It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A).

After quoting this Note, the court concluded that

> the quantity of drugs attributed to defendant arose from conduct in which he personally participated.... Defendant knew that the purpose of the trip was to obtain cocaine. He therefore aided, abetted, and willfully *caused the transaction.* Under these circumstances, the quantity of drugs attributed to the defendant need not be foreseeable.

*Lockhart,* 37 F.3d at 1454 (emphasis added).[4]

### C. Second Circuit Approach to Sentencing for Conspiracy to Possess and/or Distribute Narcotics

■ This Court declines to follow the case law cited outside this Circuit for two reasons. First, each of these cases is factually distinguishable. Second, and perhaps more importantly, the Second Circuit has thus far taken a different approach to sentencing for an offense of conspiring to possess and/or distribute narcotics. This Circuit has consistently held that the Government must prove by a preponderance of the evidence that the defendant "knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy." *Cardenas,* 917 F.2d at 687.

It is easy to see that in each of the cases described in some detail above, the defendant personally engaged in conduct amounting to a substantive offense either by committing

the substantive offense (whether or not it was charged) or by aiding and abetting the substantive offense. In *Corral–Ibarra,* the defendant personally tasted the narcotics (the contraband), and confirmed the adequacy to his coconspirator; in *Pessefall,* the defendant personally off-loaded cocaine from a boat; in *McCullah,* the defendant personally kidnapped and murdered a victim in order to recover drugs; and in *Lockhart,* the defendant aided and abetted his co-defendant's possession of cocaine. As discussed in the February 29 Opinion and again below, this is not true of Defendant Chalarca.

As noted above, the Second Circuit has consistently held that in sentencing a defendant in a conspiracy charge, the Court must determine that the defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy. In *Cardenas,* for example, the Court reviewed the sentence of a defendant who pled guilty to conspiring to possess and distribute narcotics. There, the DEA intercepted a shipment of 60 kilograms of cocaine being sent from Panama to New York, and thereafter monitored over a wiretapped telephone the conversations and actions of certain coconspirators. In New York, coconspirator Cardenas, in recorded conversations, indicated that he was responsible for paying a courier fee and taking delivery of a vehicle containing the drugs. Cardenas then went to the hotel to meet with the courier and give him some of the money. In discussing the trial court's sentencing analysis, the Court of Appeals held that "[t]he district court properly concluded that the government had met its burden of showing the defendant knew that this conspiracy involved 60 kilograms or could have reasonably foreseen such amount...." *Cardenas,* 917 F.2d at 687. *See also United States v. Pico,* 2 F.3d 472, 475 (2d Cir.1993) (defendant pled guilty to conspiracy to import cocaine; defendant personally carried

---

4. While it is possible to distinguish *Lockhart,* as discussed in the text, I also conclude that *Lockhart* was wrongly decided and should not be followed in this Circuit. In this Circuit, the Government would be required to prove that Lockhart either knew or could reasonably foresee the quantity in issue. Because Lockhart contested knowledge of the quantity, and because there was no *act* that he did which would *ipso*

*facto* reveal that he knew the quantity (*e.g.* carrying drugs, viewing drugs, buying drugs, etc.), the Government would be required to establish that the charged quantity was reasonably foreseeable. At least one other Circuit concurs. *See United States v. Mesa–Farias,* 53 F.3d 258, 260 (9th Cir.1995) (proper to apply § 1B1.3(a)(1)(A) in sentencing a conspirator who himself committed the substantive act of possessing narcotics).

duffel bag containing cocaine from ship to shore; "Pico should have reasonably known by virtue of his payment of $30,000 that he was facilitating the importation of a large quantity of drugs.").

In sum, the proper test to be applied by the District Courts in this Circuit is whether defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy. Given this conclusion, it is still my view that § 1B1.3(a)(1)(A) does not apply to this case.[5] Here, Chalarca committed no acts (other than the act of conspiracy) for which he could be sentenced.[6] In addition, as discussed in the February 29 Opinion, it is my conclusion that he could not aid and abet the commission of the crime of conspiracy. Thus, in the context of a pure conspiracy (that is, a case in which there is no proof that a defendant has committed any substantive crime), the proper test is found in § 1B1.3(a)(1)(B), which specifically covers jointly undertaken criminal activity.

A final reason for applying this test is that it is required by the time honored concept of fundamental fairness. It is all the more important to strive for fairness in quantity-based sentencing, which may not be the most reliable method for determining criminal accountability.[7] If the court looks to the stan-dard set forth in § 1B1.3(a)(1)(A), the question that still must be answered is whether defendant "knew" of the quantity of narcotics by reason of his own conduct. In a typical case, the answer would be that he did, in that he personally performed an act which incontrovertibly demonstrates knowledge of quantity (e.g. conducting telephone discussions of quantity or price, or carrying contraband). If, on the other hand, the court looks to § 1B1.3(a)(1)(B), then it may determine whether the defendant to be sentenced could "reasonably [foresee] acts and omissions of others in furtherance of the jointly undertaken criminal activity...." Where, as here, a defendant committed no substantive offense but only the inchoate crime of conspiracy, it seems appropriate to make such a determination.

## II. *Knowledge or Foreseeability*

The Government seeks reconsideration of the Court's finding that under § 1B1.3(a)(1)(B) defendant carried his burden of proving that he could not foresee the amount of narcotics whose purchase was the goal of the conspiracy. I will therefore next address, again, the question of whether Chalarca "knew or could reasonably have fore-

---

**5.** I do not quarrel with the proposition that § 1B1.3(a)(1)(A) will sometimes be the appropriate section for a court to apply in sentencing a defendant found guilty of conspiracy to possess and distribute narcotics. In some circumstances, the acts *committed* by the defendant, or the acts that defendant aided and abetted, establish the "knowledge" of quantity that is required by the Second Circuit's test ("knew *or* could reasonably have foreseen").

**6.** Because courts must treat Guidelines commentary as binding, unless it violates the Constitution or a federal statute, it is important here to closely analyze the language of Application Note 2 to § 1B1.3(a). *See Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). A portion of this Note states that "the defendant is accountable for all quantities of contraband with which he was directly involved...." Here, as discussed below, I find that Chalarca was not *directly* involved with any quantity of contraband. A second portion of this Note, on which the Government relies, states that "the requirement of reasonable foreseeability applies only in respect to the conduct (*i.e.,* acts and omissions) of others under subsection (a)(1)(B). It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A)." The Note goes on to provide "Illustrations of Conduct for Which the Defendant is Accountable." The first two illustrations in Application Note 2 bear the title "Acts and omissions aided or abetted by the defendant." In each of these illustrations, the defendant actually participated in and thereby aided and abetted a substantive offense. Indeed, the first illustration notes that the defendant there would be liable under both (a)(1)(A) and (a)(1)(B)—the first as an aider and abettor because he personally unloaded the bales of marihuana, and the second because he engaged in a jointly undertaken criminal activity. As discussed below, I conclude that defendant did not "undertake" any activity for which he could be sentenced (other than conspiracy) nor did he aid and abet any such activity.

**7.** *See, e.g.,* Marc Miller & Daniel J. Freed, *The Disproportionate Imprisonment of Low–Level Drug Offenders,* 7 Fed.Sent.Rep. 3 (1994); Jon O. Newman, *Five Guideline Improvements,* 5 Fed. Sent.Rep. 190 (1993).

seen the quantity of drugs involved in the conspiracy." *Cardenas,* 917 F.2d at 687.

### A. *Jury Verdicts Do Not Bind Sentencing Courts with Respect to Drug Quantity*

■ In *United States v. Campuzano,* 905 F.2d 677 (2d Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), the court held that the particular quantity of narcotics is not an element of the offense. "Determining drug quantity is a task for the sentencing court. . . ." *United States v. Shonubi,* 998 F.2d 84, 89 (2d Cir.1993) (citing *United States v. Olvera,* 954 F.2d 788, 791 (2d Cir.), *cert. denied,* 505 U.S. 1211, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992)). Moreover, "in performing that task [the court] is not bound by jury findings or evidence presented at trial, but may consider any reliable proof." *Shonubi,* 998 F.2d at 89 (citing *United States v. Madkour,* 930 F.2d 234, 237 (2d Cir.), *cert. denied,* 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991)). Indeed, the Second Circuit has held that a district court's stated "view that the court was bound by the jury's finding as to quantity was erroneous." *United States v. Jacobo,* 934 F.2d 411, 416 (2d Cir.1991). In *Jacobo,* the court further held that "[t]here is no reason in principle that, as to a matter that is not within the exclusive province of the jury, the sentencing court may not make findings that differ from those made by the jury." 934 F.2d at 417. The court went on to discuss the question of drawing inferences.

> [T]he court could also logically make findings that are more favorable to the defendant. Questions of inference and credibility are within the province of the finder of fact. As to any sentencing matter on which the court must make its own findings, the court is entitled to draw the inferences it believes appropriate and to make its own assessments as to the weight of the evidence and the credibility of the

witnesses. Its inferences and evaluations may differ from those of the jury.

*Id.*

### B. *Government's Argument Regarding Extent to Which Jury Verdict Against Chalarca Binds this Sentencing Court*

The Government argues that the jury's verdict binds this Court to a finding that Chalarca could reasonably foresee that his co-conspirator intended to purchase 12 kilograms of cocaine; or, in the alternative, that he surely could foresee that his co-conspirator intended to purchase whatever amount of cocaine could be purchased by the $70,000 that was in the bag found in Chalarca's car. Specifically, the Government argues that the jury's guilty verdict necessarily means that (a) Chalarca was present on the day of the "buy" pursuant to an agreement with Sanchez to accomplish an object of the conspiracy; (b) that Chalarca's transfer of the bag containing money in the Jeep was an act in furtherance of the conspiracy; and (c) that Chalarca knew that the $70,000 in the bag was to be used to purchase narcotics. *See* Memorandum of Law in Support of Motion for Reconsideration ("Gov't Mem.") at 20. I agree that the jury necessarily made the first two findings but disagree that it was necessary for the jury to make the third finding.

### C. *Court's Opinion Regarding Extent to Which Jury Verdict Against Chalarca Binds this Sentencing Court*

■ The jury must have found that Chalarca agreed with Sanchez to assist him in purchasing a quantity of narcotics. They could have reached this conclusion by crediting the taped co-conspirator statements offered by the Government, in which Sanchez states that "his cousin," described as Chalarca, would be present to pick up the drugs. Combining this evidence with Chalarca's presence at the scene of the attempted "buy," the jury could have concluded that Chalarca knowingly and willfully agreed to assist Sanchez in purchasing drugs.[8] There

---

**8.** Uncorroborated statements by co-conspirators, combined with circumstantial evidence, have been held to form sufficient basis for a conviction. *See, e.g., United States v. Alvarado,* 898 F.2d 987 (5th Cir.1990) (evidence consisted of defendant's arrival in a town coincident with co-conspirator's informing an undercover that the cocaine was in town; co-conspirator's statements to undercover that defendant brought the cocaine; co-conspirator's statement that he placed the money used to buy the cocaine in the defendant's car; and recovery of a substantial

is no reason, however, that the jury must have found that Chalarca knew what quantity (or indeed what drug) Sanchez intended to purchase.

Without question, in order to adhere to the Court's charge, the jury must have found more than "mere presence." The jury must have found that Chalarca entered into an agreement with Sanchez to achieve the goal of the conspiracy, namely to purchase a distributable amount of narcotics. However, to conclude (as I do) that Chalarca was unaware of Sanchez' conversations with the CI (all of which took place outside his presence) and that Sanchez was unaware of the amount of money in the car does no violence to the jury's verdict. The Government contends that it is the Court's view of the evidence that after the money was shown to the CI, "Chalarca sat wordlessly in the jeep until Sanchez and the CI left the car. Then, after Sanchez and the CI had walked away, Chalarca merely stepped out of the jeep and stood on the street. He was then arrested after brief flight." Gov't Mem at 18. The

Government goes on to argue that the foregoing conduct alone would not have supported a finding by the jury that Chalarca knowingly and willfully agreed with Sanchez to distribute and possess with intent to distribute drugs. However, the Government is simply setting up a straw man, only to knock him down.[9] While the Government correctly summarizes the Court's view of the above-described evidence, this is *not* the only evidence in the case. As noted earlier, the jury may have based its determination (that Chalarca knowingly and willfully agreed with Sanchez to possess narcotics with intent to distribute) on Sanchez' taped statements *in conjunction with* Chalarca's appearance at the scene of the "buy." Obviously, if the Court did not believe that the jury could have reached this conclusion, it would have granted defendant's motion for a judgment of acquittal.

The Government doth protest too much. The fact is, the case it presented against Chalarca was paper thin.[10] As recounted in

amount of this money in defendant's car. *Held:* this evidence was sufficient to support a conviction for conspiracy to distribute cocaine); *United States v. Wiseman,* 814 F.2d 826 (1st Cir.1987) (evidence consisted of statements by a co-conspirator that defendant "was brought up from the City to help distribute the junk on the street because business has been so good"; defendant's presence while terms of drug deal were discussed; and packets of heroin found on defendant's person. *Held:* evidence was sufficient to support conviction for conspiracy to possess with intent to distribute heroin).

9. The Government states that "it is error to attribute to the defendant *no* quantity of narcotics." Gov't Mem. at 3 (emphasis in original). The Court did no such thing. Rather, I determined "that no *particular* quantity was foreseeable to" Chalarca, and therefore determined that the appropriate offense level for him was that level which "represents the least amount of cocaine that appears on the Drug Quantity Table." February 29 Opinion at 997 (emphasis added).

10. In attempting to prove that Chalarca committed an act in furtherance of the conspiracy (beyond merely being present when the transaction was to occur), the Government relied at trial on one of several taped conversations between Sanchez and the CI. *See* GX 9, GX 9A. In fact, it relied on the only conversation (out of nine) in which it alleged that Chalarca spoke. This conversation occurred outside Wendy's immediately before the arrest of Sanchez and Chalarca. The

entire conversation is between Sanchez and the CI, with the exception of one line supposedly spoken by Chalarca.

At trial, the Government elicited testimony from a professional interpreter who said that the line spoken by Chalarca was "look at the bag" (in Spanish, "vea la bolsa"). GX 9/9A at 6; Trial Tr. at 105. However, this testimony was painfully extracted. First, at an audibility hearing, the Court itself could not hear the line allegedly spoken by Chalarca. Even upon playing the tape repeatedly, I still heard nothing that would suggest that a third person spoke during the conversation between Sanchez and the CI. But since Spanish is not my native language, I deferred to the interpreter, who maintained that she heard the line, and allowed the jury to see the transcript and hear the tape. However, when testifying in open court, the interpreter stated *twice* that the phrase she heard was "esa la bolsa" (that is the bag). Only after these two "errors" did she "correct" herself and say that the phrase was "vea la bolsa." Trial Tr. at 105. The Court notes also that the interpreter herself heard no such phrase until the tape recording was electronically enhanced. Trial Tr. at 99–100.

Finally, the Government contends that when Sanchez and the CI approached the Jeep, Sanchez asked Chalarca "where is the money?". Gov't Mem. at 9. Chalarca's purported statement about the bag would thus be in response to a direct question from Sanchez. But despite testifying that Sanchez asked Chalarca "where is

the February 29 Opinion, there is no evidence that Chalarca participated in any negotiations, met with any seller, saw or handled any drugs, or indeed engaged in any conspiratorial conversations with Sanchez. In fact, Chalarca's co-conspirator has stated for over a year, at great risk to his own sentencing prospects, that Chalarca knew nothing about the deal. Chalarca has no prior criminal record, has held a low-level job as a hospital custodian for eight years, is married and the father of three children, and has no unexplained wealth. There is simply no proof which this Court can credit that would permit the Government to sustain its burden of proving by a preponderance of the evidence that Chalarca "knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy."

### III. *Role in the Offense*

At the last page of its brief, the Government argues that "by 'taking into account the defendant's role in determining his offense level', the Court's opinion is in error." Gov't Mem. at 31 (quoting February 29 Opinion at 997). If this is error, it was introduced by the Court of Appeals six years ago.

> It [the court] is not required to find that appellant had knowledge of the exact quantity of narcotics involved in the conspiracy so long as—in considering defendant's *role in the narcotics part of the charged conspiracy*—the district court determines that it is convinced by a preponderance of the evidence that defendant knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy.

*Cardenas,* 917 F.2d at 687 (emphasis added). Furthermore, the Guidelines themselves require some consideration of defendant's role. As the Government has noted, § 1B1.3(a)(1) (the relevant conduct section) distinguishes between those occasions when a defendant commits a crime or aids and abets a crime and those occasions when others with whom defendant is engaged in "jointly undertaken conduct" commit a crime. To that extent, the Guidelines themselves tolerate some ref-

erence to the role in the offense in determining relevant conduct. This was what I intended in discussing role in the offense. I simply meant that given Chalarca's very limited role in this offense, the Government had failed to establish by a preponderance of the evidence that he "knew or could reasonably have foreseen the quantity of drugs involved in the conspiracy."

### IV. *Conclusion*

I have considered all of the arguments raised by the Government in its Motion for Reconsideration. However, upon reconsideration, I reach the same conclusion that I did on February 29, 1996. For the reasons set forth in that Opinion and herein, I find that there is no quantity of drugs of which defendant Chalarca knew or could reasonably have foreseen. However, because I am bound by the jury's verdict that he conspired to possess and distribute cocaine, I find that the appropriate offense level is 12, pursuant to U.S.S.G. § 2D1.1(c)(14), representing the least amount of cocaine that appears on the Drug Quantity Table. Sentencing is scheduled for March 18 at 4:30.

the money?", the CI conceded that no such question appeared on the tape or transcript and of-

fered no explanation for this purported omission. Trial Tr. at 172, 188.